Appellant was convicted of grand larceny and the Court sentenced him to seven years imprisonment in the penitentiary. Prior to arraignment it was ascertained that appellant was without counsel to represent him and desired the services of an attorney. Thereupon the Court appointed an experienced trial lawyer to represent him at arraignment and trial. He went to trial under a plea of not guilty and not guilty by reason of insanity. After sentence was imposed he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
The evidence adduced by the State tended to show that on the afternoon of May 17, 1974, around 3 o'clock appellant went into a jewelry store in Tuskegee, Alabama, to look at a man's diamond ring. Appellant had been in this store several days prior to May 17, 1974, and told the owner that he wanted a diamond cluster ring with a horseshoe design. The owner of the jewelry store, Mr. William T. Coggans, informed appellant that he did not have such a ring in stock. Appellant came back to the store on May 17, and again inquired about a diamond cluster ring with a horseshoe design and Mr. Coggans told appellant that he had not been able to obtain such a ring. Appellant then said he wanted to look at some other rings and Mr. Coggans went behind the counter and unlocked the case in which diamond rings were kept. Appellant reached over and picked up a diamond ring with clusters and put it on his finger and walked out the front door. As appellant was walking toward the door Mr. Coggans thought he said he wanted to look at the ring in a different light but when he reached the door he kept going.
Mr. Coggans testified that the ring was worth $395.00 and when he realized that appellant was leaving the store he went to the door to stop him but appellant was going across the square. Another man by the name of Harold Collins entered the store with appellant and left behind appellant. Mr. Coggans immediately called the Tuskegee Police Department and reported the theft of the ring. Mr. Coggans had known appellant for several years and no question was raised as to his identity.
Lieutenant Roy Cole of the Tuskegee Police Department responded to Mr. Coggans' call and about fifteen minutes later he saw appellant and Harold Collins walking on Highway 81, north of Auburn Street, and he stopped them. He observed what appeared to be weapons in the pockets of both men. He ordered the men to put their hands on top of the car and at this time he saw a diamond ring on appellant's finger. He called for a back-up unit and Lieutenant Flowers arrived on the scene. Officer Cole searched appellant and removed a .38 caliber pistol from his pocket. Officer Flowers searched Collins and removed a .25 caliber pistol from his pocket.
Officer Cole handcuffed appellant and put him in the rear of the patrol car and transported him to the station house. While en route to the jail Officer Cole got a radio message to pick up another officer. *Page 1337 
Collins was put in Officer Flowers' car and transported to the City jail.
When Officer Cole was putting the handcuffs on appellant, he saw the diamond ring on his finger. On the way to the jail appellant asked for a cigarette and Officer Cole put one in his mouth and lit it for him. When they got to the jail Officer Cole did not see the diamond ring and he asked appellant about the ring and appellant said he did not have the ring and denied that he ever had the ring. The officers searched the clothing of appellant and did not find the ring. They removed all of his clothing and they could not find the ring. Officer Cole testified that only four minutes elapsed from the time he put appellant in the patrol car and the time they arrived at the jail. The officers thoroughly searched the patrol car in which appellant was transported to jail and the ring was not in the car.
The officers logically concluded that appellant must have swallowed the ring. The officers carried appellant to a local hospital and had an x-ray made of his stomach. An x-ray technician took the x-ray in the presence of Officer Cole and after the film was developed the officer testified that he could clearly see a ring in appellant's stomach.
The x-ray technician, Marie Reafroe, testified that on the 17th day of May, 1974, Officer Cole brought appellant to the hospital for a stomach x-ray and that she made the x-ray. In court she identified appellant as the man she x-rayed and identified the x-ray film that she took and developed. The x-ray film is before us and it is crystal clear there is a ring in the stomach and it clearly appears on the x-ray film. Over appellant's objection this x-ray film was introduced into evidence.
Mr. Coggans was shown the x-ray film revealing the outline of a ring. He was asked if he could identify that ring as being the one that appellant took from his store and he replied, "Not by looking at the picture, I can't."
Appellant did not testify in his behalf but offered the testimony of several police officers in support of his plea of not guilty by reason of insanity. The strongest testimony that was developed from these officers, during the time they observed him in jail, was that "he was not normal"; "that he was not in his right mind," and "looked like he was insane, I don't think he acted right." They all testified that he would bang on the jail bars and would take off all his clothes.
The record indicates that after appellant's arrest he was carried to Bryce Hospital for a period of time pursuant to a Court order issued pursuant to a petition filed by his attorney. This petition, Court order, and the findings of the doctors at Bryce Hospital are not in this record.
The defense of insanity must be clearly proved to the reasonable satisfaction of the jury and the burden of proof in this regards rests on the defendant. Insanity is treated as an affirmative defense. Title 15, Section 422, Code of Alabama 1940, and cases there cited.
The scanty proof presented by the defense on the issue of insanity certainly did not meet the test laid down in the case of Parsons v. State, 81 Ala. 577, 2 So. 854. Nevertheless, the trial court gave appellant the benefit of the doubt by charging the jury fully on the law of insanity and at the conclusion of the oral charge appellant's counsel announced, "Satisfied."
The sufficiency of the evidence is not presented to us for review. There was no motion to exclude the State's evidence; there was no request for the affirmative charge; there were no exceptions reserved to the oral charge of the Court, and there was no motion for a new trial. Jones v. State, 55 Ala. App. 466,316 So.2d 713; Frazier v. State, 56 Ala. App. 166, 320 So.2d 99;Bass v. State, 55 Ala. App. 88, 313 So.2d 208.
We turn now to determine whether the x-ray film was legally admitted into evidence or whether its admission violated any of appellant's constitutional rights not to be compelled to give evidence against *Page 1338 
himself. Under the following Federal cases we hold that appellant's constitutional rights were not violated: UnitedStates v. Allen, D.C., 337 F. Supp. 1041; Schmerber v. State ofCalifornia, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; Cuppv. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900.
In Schmerber, supra, the Court said:
 "On the other hand, both federal and state courts have usually held that it (the 5th Amendment) offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling `communications' or `testimony', but that compulsion which makes a suspect or accused the source of `real or physical evidence' does not violate it."
In Schmerber a blood sample was drawn from a defendant, over his objections, who was accused of driving an automobile while under the influence of intoxicating liquor. The Court held that the admission of the blood analysis into evidence did not violate the defendant's Fifth Amendment privilege against self-incrimination and the taking of the blood did not violate his Fourth Amendment right to be free of unreasonable searches and seizures.
In United States v. Allen, supra, it was held that the use of such bodily identification evidence as securing blood samples and x-rays does not violate the privilege against self-incrimination under the Fifth Amendment or the search and seizure clause of the Fourth Amendment.
The Court went on to say: "Of course an x-ray is not actually seized from the person x-rayed, but the use of the body to make the x-ray is so seized and considering that x-rays actually penetrate the body we cannot say as a matter of law that it is less an invasion than the taking of blood."
In Cupp v. Murphy, supra, the Court upheld the right of police officers, who had probable cause to suspect the accused had killed his wife, to take a sample of scrapings from the suspect's fingernails over his protest.
In the present case a police officer went before the judge of the Recorder's Court of the City of Tuskegee and made an affidavit that he had reason to believe that a stolen diamond was in the stomach of appellant. Affiant's belief was based on viewing a prior x-ray which showed that a ring believed to be the one stolen from Coggans Jewelry Store on May 17, 1974, was in the stomach of appellant. This affidavit was made on May 24, 1974.
A search warrant was issued by the Magistrate to confirm
affiant's belief that a ring was then and there in the stomach of appellant.
We think that aside from the x-ray the facts and circumstances of this case were sufficient to submit the issue of appellant's guilt vel non to the jury. The owner of the jewelry store saw appellant put the ring on his finger and walk out of the store. Fifteen to twenty minutes later a police officer arrested appellant and saw a diamond ring on his finger and four minutes later the ring was missing.
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Rider v. State, 56 Ala. App. 137, 319 So.2d 756;Washington v. State, 55 Ala. App. 116, 313 So.2d 544; Price v.State, 53 Ala. App. 465, 301 So.2d 230.
The refused charges containing correct statements of the law were adequately and substantially covered in the Court's oral charge and in the charges given at the request of appellant. *Page 1339 
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.