Josephus R. Anderson was indicted by the Jefferson County Grand Jury on December 7, 1979, for robbery. Arraignment was held on January 16, 1981, with court-appointed counsel present, wherein appellant entered a plea of not guilty. On May 6, 1981, a motion to transfer appellant from Holman Station, Alabama, to the Jefferson County Jail was filed which was granted *Page 1366 
May 29, 1981. Appellant also filed a motion to produce and a motion for change of venue on May 6, 1981. After a hearing on May 15, 1981, before the Honorable James Garrett, Circuit Judge of Jefferson County, appellant filed a motion for continuance which also was denied. Appellant filed an amended motion for change of venue on December 18, 1981, which was denied on January 21, 1982.
Appellant was tried before a jury on January 27, 1982, and was found guilty as charged. Appellant was sentenced to life imprisonment in the state penitentiary.
A motion for new trial was filed on February 25, 1982. After a hearing on March 25, 1982, said motion was denied.
Jill Tapscott, branch manager of Jefferson Federal Savings and Loan on Fifth Avenue in downtown Birmingham, Alabama, testified that, on November 29, 1979, she was working at the branch office along with Shannon Hill and Jane Baird. At approximately 3:30 p.m., Ms. Tapscott stated that she walked into the front of the branch office and saw a black male holding a gun on Shannon Hill, a bank employee. She stated that Ms. Hill was attempting to open the bank safe. Ms. Tapscott stated that, when the black man saw her walk into the front office, he also pointed the gun at her.
Ms. Tapscott described this man as six feet tall, wearing a blue and white striped sweater-shirt and a brown leather hat with a small visor. He was also wearing a jacket, but Ms. Tapscott stated she could not remember what type. The black male was described as having short hair and a moustache and carrying a silver revolver with a brown handle. Ms. Tapscott further stated this man was carrying a brownish-yellow paper sack.
Ms. Tapscott stated that the robber was in her presence from three to five minutes and was within two feet of her. She identified appellant as the black male who robbed the bank on November 29, 1979.
Ms. Tapscott stated that Shannon Hill gave the robber some rolls of change and "marked" money from her teller drawer. Ms. Tapscott testified that she herself gave the robber over $13,000 in American Express Travelers Checks.
Shannon Hill testified that she was balancing and counting her money at a teller window when a black male walked up to her counter, pulled a gun and asked for money. Ms. Hill stated that she gave the man approximately $150 in marked money from her drawer and some rolls of coins. She stated that Jane Baird, another bank teller, gave him all the money from her drawer and that Jill Tapscott gave the man travelers checks. She stated that the robber put all the money into a yellow paper bag.
Ms. Hill stated that the black male remained in the bank for six minutes. She stated that he was wearing light blue denim blue jeans, a knit pullover with contrasting blue and white stripes and a beige wool cap with a small bill on the front. She also described the gun he was carrying as "being silver." Ms. Hill identified the appellant as the man who robbed the bank on November 29, 1979.
Frank Erwin, a Birmingham police officer, testified that he received a call around 3:30 p.m. on November 29, 1979, to go to the Jefferson Federal Savings and Loan on the corner of Fifth Avenue and 20th Street. After arriving at the bank, Officer Erwin stated that Jill Tapscott gave him a description of the robber which he then relayed over the police radio.
Charles H. Newfield, a Birmingham police officer, testified that he was working an extra job at Sears in downtown Birmingham on the day of the robbery. He stated that he heard a communication over his police radio regarding the robbery at approximately 3:55 p.m. Officer Newfield stated that after hearing the report he went outside the Sears building. Officer Newfield stated that he observed appellant walking down 16th Street toward him and turn left on Second Alley. He described appellant as wearing a leather cap with a small brim, a patchwork leather jacket, a light blue knit striped sweater and said he *Page 1367 
was carrying a yellow sack. Officer Newfield stated that he followed appellant until he turned off Second Alley at 12th Street. After losing sight of appellant, Officer Newfield stated that he heard gunshots. Officer Newfield testified that he then ran in the direction of the sound of the gunshots which led him to the Southern Motor Inn Motel. There he observed appellant lying on the ground in front of the motel swimming pool. A yellow sack was lying on the ground near the appellant.
Officer R.E. Middleton testified that he was a member of the tactical unit of the Birmingham Police Department and was working in "plain clothes" on November 29, 1979. Officer Middleton stated that he heard certain radio transmissions concerning the robbery which caused him to proceed in his patrol car west on Second Avenue to 13th Street where he turned north. Officer Middleton testified that he pulled up beside a person at Second Alley and 13th Street who fit the description of the robbery suspect which he heard over the radio. He stated that his partner said, "Halt, police," after which the black male began to run. Officer Middleton testified that he saw the fleeing man pull out a gun so he jumped out of the patrol car. After he and his partner fired a shot at the fleeing suspect, the suspect fell. The suspect turned and fired at the officers and then ran into the area of the Southern Motor Inn Motel.
A marked police car pulled up beside the suspect at the motel and the suspect shot at this vehicle. The officers in this police car returned his fire and the appellant fell again near the motel swimming pool after being shot. Officer Middleton stated that he approached the fallen suspect and took the pistol out of his hand. Officer Middleton identified appellant as the fleeing man.
Birmingham Police Officer Joe Johnson testified and corroborated the testimony of Officer Middleton.
Greg Bearden, an evidence technician with the Birmingham Police Department, testified that he collected money and travelers checks from the scene where appellant was apprehended. He stated that he made photographs of the scene and photocopies of the travelers checks found near appellant.
Gayle Yester, another Birmingham Police Department evidence technician, testified that she went to the Jefferson Federal Savings branch office at Fifth Avenue and 20th Street on November 29, 1979, at approximately 4:00 p.m. She took photographs, made diagrams and processed the scene for fingerprints. Officer Yester stated that, after she finished her duties at the branch office, she went to the Southern Motor Inn Motel where appellant had been apprehended. There she assisted Officer Bearden record the serial numbers of the money and travelers checks that had been recovered from appellant.
Shannon Hill was recalled and testified that the serial numbers on the money recovered from appellant matched the serial numbers on her "bait money" that had been taken from her teller drawer.
We note that, at the time of appellant's trial for robbery, he had previously been tried twice for the murder of Officer Eugene Ballard who was killed immediately after the robbery. Appellant's murder trials, both of which resulted in "hung juries," were had in Mobile, Alabama, because of extensive publicity surrounding the robbery-murder.
Initially, appellant contends that the trial court erred in denying his amended motion for change of venue. Appellant argues that, because of widespread publicity in the Birmingham area concerning the robbery and murder of Officer Ballard, he was denied his right to a fair and impartial trial. He specifically argues that editorials appearing in the Birmingham Post Herald after the second mistrial of his murder trial in Mobile emphatically stated that appellant was guilty of the robbery charge.
A defendant has the right to have his trial removed to another county if he cannot receive a fair and impartial trial in the county in which the indictment is found. Ala. Code §15-2-20 (1975). However, *Page 1368 
the defendant has the burden of showing to the reasonable satisfaction of the court that a fair and impartial trial cannot be had and an unbiased verdict cannot be reasonably expected. Anderson v. State, 362 So.2d 1296 (Ala.Cr.App. 1978);Boutwell v. State, 279 Ala. 176, 183 So.2d 774 (1966).
The granting of an accused's motion for change of venue rests within the sound discretion of the trial court and its ruling thereon will not be disturbed except for gross abuse. Lopez v.State, 415 So.2d 1204 (Ala.Cr.App. 1982). As stated inAnderson, supra, 1298-1299:
 "Newspaper articles, without more, are not evidence on a motion for change of venue; their effect must be shown. Beddow v. State, 39 Ala. App. 29, 96 So.2d 175
(1956), cert. denied, 266 Ala. 694, 96 So.2d 178
(1957), 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414
(1958).
 "Except in the situation where there is a showing of `inherently prejudicial publicity which has so saturated the community, as to have a probable impact upon the prospective jurors', the trial court's primary responsibility in dealing with allegedly prejudicial pretrial publicity is whether, as a result of such publicity, it is reasonably unlikely that the defendant can secure a fair and impartial trial. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); United States v. Jones, 542 F.2d 186 (4th Cir. 1976); McWilliams v. United States, 394 F.2d 41
(8th Cir. 1968).
 "In Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975), the United States Supreme Court recognized that:
 "`Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
 "`"To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."' (citations omitted)
 "`At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality."'
 "Recently the Supreme Court affirmed the principles expressed in Murphy.
 "`Petitioner's argument that the extensive coverage by the media denied him a fair trial rests almost entirely upon the quantum of publicity which the events received. He has directed us to no specific portions of the record, in particular the voir dire examination of the jurors, which would require a finding of constitutional unfairness as to the method of jury selection or as to the character of the jurors actually selected. But under Murphy, extensive knowledge in the community of neither the crimes nor the putative criminal is sufficient by itself to render a trial constitutionally unfair. Petitioner in this case has simply shown that the community was made well aware of the charges against him and asks us on that basis to presume unfairness of constitutional magnitude at his trial. This we will not do in the absence of a "trial atmosphere utterly corrupted by press coverage."' Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344
(1977).
 "The proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination."
After careful review, we find that there was no showing that any prospective juror read the editorials which appellant claims prejudiced his case. The only showing that was made was that some of the *Page 1369 
prospective jurors had some recollection of the events surrounding the robbery.
Furthermore, defense counsel and the district attorney stipulated that twenty seven jurors were questioned individually outside the presence of the other jurors concerning their recollection of any publicity surrounding the case. Fourteen of the twenty-seven jurors had some recollection of the events surrounding the robbery. Two of the fourteen jurors were excused for cause when they stated they could not disregard the pretrial publicity. Two additional jurors who stated they had no previous knowledge of the case replaced those jurors who were struck for cause. The remaining jurors who had some knowledge of the case indicated that they could disregard their recollection and base their verdict on the testimony they heard at trial. Of the jurors empaneled to hear the case, five jurors who had expressed some prior knowledge of the case remained on the panel.
The fact that jurors knew of the case did not establish that at the time of empaneling they were biased against the defendant where they swore that their knowledge would not affect their judgment. Anderson, supra; Hale v. United States,435 F.2d 737 (5th Cir. 1970), cert. denied, 402 U.S. 976,91 S.Ct. 1680, 29 L.Ed.2d 142 (1971).
The evidence before us reveals that the jury was not prejudiced against appellant and therefore we find no error in the refusal of the trial judge to grant the motion for a change of venue.
Appellant also contends that the trial court erred in denying his motion for a trial continuance. He again argues that, because of pretrial publicity some two months prior to his trial, the trial should have been postponed to a later date. However, due to our finding above that the jurors were not biased against appellant, we find no abuse of judicial discretion in its denial of appellant's motion for a continuance. Jackson v. State, 414 So.2d 1014 (Ala.Cr.App. 1982).
Appellant argues that his in-court identification by witnesses Tapscott and Hill resulted in prejudicial error since their identifications were based on suggestive pretrial photographic identification procedures. From the record, we find that appellant was indicted for robbery on December 7, 1979. On December 11, 1979, Ms. Tapscott and Ms. Hill were shown six photographs, one of which was appellant's. The photograph of appellant did not have an "IR number" on the front of the photograph as did the other five photographs. Appellant's photograph also had his name written on the back of the picture. It is appellant's contention that his picture shown to the witnesses in which an "IR number" was missing and where his name was written on the back coupled with the publicity at the time of the witnesses viewing the photograph resulted in a suggestive and improper photographic lineup procedure.
When an in-court identification is shown to have a basis independent of any pretrial identification or confrontation, it is properly admitted into evidence. Jackson v. State,414 So.2d 1014 (Ala.Cr.App. 1982).
As this court stated in Matthews v. State, 361 So.2d 1195,1198 (Ala.Cr.App. 1978),
 "Whether an in-court identification has been so tainted by an extrajudicial identification as to vitiate the in-court identification is not to be determined solely by the circumstances of the extrajudicial identification, but all of the circumstances relative to the identification of defendant by the witness are to be taken into consideration, and if it is determinable therefrom that an in-court identification was independent of the extrajudicial identification, evidence of the in-court identification is admissible." (Citations omitted)
During voir dire examination of witnesses Tapscott and Hill outside the presence of the jury, each was asked if she had an independent recollection of the description of the robber without having seen any photographs. Both witnesses replied that they recalled what the robber looked like *Page 1370 
by viewing him during the robbery of the bank rather than from viewing any photographs. Furthermore, both witnesses gave accurate, detailed descriptions of the appellant immediately after the robbery occurred. Appellant was viewed by the witnesses in a well-lighted building, in the daylight hours, for approximately five minutes and within a close proximity.
In view of the totality of the circumstances, we do not find the in-court identification of the appellant tainted by the exhibition of his photographs to witnesses Tapscott and Hall. The evidence is clear that both witnesses based their identification of the appellant on their recollection of the events surrounding the robbery and observations thereof.
Appellant contends that the trial court erred in denying his challenge for cause of jurors Brown and Benjamin. He argues that these jurors indicated on voir dire questioning that their recollection of events surrounding the robbery and later murder of Officer Ballard would affect their judgment.
The record shows that appellant moved the trial court for a Rule 10 (f) order to supplement the record to show the individual jurors' answers to voir dire questions. It was further shown by sworn affidavit that the court reporter's notes and tapes of the juror's voir dire questioning were reported missing prior to their being typed. However, we note that defense counsel and the district attorney entered a stipulation which said that two prospective jurors from the venire who stated they could not disregard previous news accounts of the case were dismissed from the venire and replaced by two who were unaware of the surrounding publicity. The parties further stipulated that all the other jurors who had heard any of the pretrial publicity stated they could disregard their recollections and base their verdict on the testimony they heard during the trial. As this court stated inChillous v. State, 405 So.2d 58 (Ala.Cr.App. 1981), before a criminal conviction is to be reversed, it must appear to this court that the error complained of has probably injuriously affected the substantial rights of the defendant. After careful review of the record, we find no prejudicial error of the trial court's ruling.
Appellant's contention that he was denied his right to counsel for state criminal prosecutions as established byGideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799
(1963), is without merit. The record firmly shows that appellant was indicted for robbery on December 7, 1979. On December 18, 1979, the Honorable William N. Clark was appointed to represent appellant in this cause. Subsequent to appointment of counsel, Jefferson County Circuit Judge Wallace Gibson entered an order staying any further action on this robbery case pending the outcome of the homicide trial in Mobile County. After two mistrials in the homicide case, the Jefferson County District Attorney's office proceeded with the robbery charge against appellant and the Honorable Orson L. Johnson was appointed on January 16, 1981, to represent appellant in this cause. Appellant was subsequently tried for robbery approximately one year later on January 25, 1982. The record firmly establishes the fact that appellant was most ably represented at all times during the disposition of his robbery case.
Appellant's final contention is that this cause is due to be reversed because of a fatal variance in the proof adduced at trial and the charge in the indictment.
The record shows that appellant was indicted on December 17, 1979, wherein the indictment reads as follows:
 "The grand jury of said county charge that, before the finding of this indictment, JOSEPHUS R. ANDERSON, alias ROBERT HENDERSON, JR., whose name is to the Grand Jury otherwise unknown, feloniously took Thirteen Thousand Three Hundred Fifty Dollars in American Express Travelers checks and Two Thousand Three Hundred Eight Dollars of the lawful currency of the United States of America, a more particular description and denomination of which is to the Grand Jury otherwise *Page 1371 
unknown, the personal property of Jill Tapscott, from her person and against her will, by violence to her person or by putting her in such fear as unwillingly to part with the same."
Appellant argues that no evidence was produced at trial showing that anything other than travelers checks was taken from Ms. Tapscott and that no evidence was introduced showing the value of the travelers checks taken. It is appellant's contention that some value must be shown before the offense of robbery can be made out. We disagree.
As stated in Frazier v. State, 56 Ala. App. 166, 320 So.2d 99
(1975), the amount of money or the value of property taken is immaterial in a robbery prosecution. It is consistently held in Alabama that the crime of robbery is basically a crime against the person. Johnson v. State, 406 So.2d 451 (Ala.Cr.App. 1981).
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.