**Anthony GRAVES, Plaintiff,**

v.

**Margaret M. HECKLER, Defendant.**

**Civ. A. No. 84–2909.**

United States District Court,
District of Columbia.

April 25, 1985.

John S. Olshin, Washington, D.C., for plaintiff.

James N. Owens, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

■ This is a social security case in which the Court must determine whether the decision of the Secretary to deny plaintiff's claim of disability benefits is supported by substantial evidence. See 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).[1] The Secretary's decision in this

---

**1.** Substantial evidence is that evidence which a reasonable mind would accept as sufficient to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Blalock v. Richardson,* 483 F.2d 773, 776 (4th Cir.1972).

case that plaintiff is not so mentally impaired as to prevent him from engaging in work-related activities is plainly not supported by substantial evidence.

I

Plaintiff has been institutionalized at John Howard Pavilion at St. Elizabeth's Hospital since June 23, 1982, after having been found not guilty by reason of insanity on thirteen charges of rape, sodomy, and assault, involving five different women.[2] Under the law (D.C.Code 24–301(e)), plaintiff may be released only pursuant to a court order,[3] and no suggestion has been made by anyone that plaintiff is or in the foreseeable future will be fit for release.

■ In fact, plaintiff has severe mental impairments, the diagnosis being mixed personality disorder with schizoid and borderline features.[4] The administrative law judge (ALJ) who made the decision on behalf of the Secretary, acknowledged this diagnosis, but he then went on to deny the benefits on the basis that "the claimant

does not have any impairments which significantly limit his ability to perform basic work-related activities; therefore, the claimant does not have a severe impairment (20 C.F.R. 404.1521)." That conclusion is incorrect for several reasons.

First. The ALJ's finding conflicts with the regulations themselves. An individual is disabled if he has a severe impairment which "meets or equals a listed impairment in Appendix 1." 20 C.F.R. § 404.1520(d). The record shows that plaintiff suffers from functional nonpsychotic disorders as described in § 12.00 of Appendix 1, in that there is clinical evidence of "persistent, deeply ingrained, maladaptive patterns of behavior manifested by either: a. seclusiveness or autistic thinking; or b. pathologically inappropriate suspiciousness or hostility" and that this results in the persistence of a seriously impaired ability to relate to other people. See 20 C.F.R. § 404, Appendix 1, § 12.04. Thus, pursuant to the Secretary's own regulations, plaintiff is disabled.[5] It is unlikely that the Secretary would conclude that a long-term hospital patient with a chronic physical ailment is

2. See Decision of Administrative Law Judge (ALJ), Record at 15; Record at 85.

3. 24 D.C.Code § 301(e) provides in relevant part that "[w]here any person has been confined in a hospital for the mentally ill pursuant to subsection (d) of this section, and the superintendent of such hospital certifies: (1) That such person has recovered his sanity; (2) that, in the opinion of the superintendent, such person will not in the reasonable future be dangerous to himself or others; and (3) in the opinion of the superintendent, the person is entitled to his unconditional release from the hospital, and such certificate is filed with the clerk of the court in which the person was tried, and a copy thereof served on the United States Attorney or the Corporation Counsel of the District of Columbia, whichever office prosecuted the accused, such certificate shall be sufficient to authorize the court to order the unconditional release of the person so confined from further hospitalization at the expiration of 15 days from the time said certificate was filed and served as above; but the court in its discretion may, or upon objection of the United States or the District of Columbia shall, after due notice, hold a hearing at which evidence as to the mental condition of the person so confined may be submitted, including the

testimony of 1 or more psychiatrists from said hospital. The court shall weigh the evidence and, if the court finds that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others, the court shall order such person unconditionally released from further confinement in said hospital." This section also provides for conditional release.

4. See letter from Paul Peckar, Medical Officer Psychiatric, Record at 2A; Record at 83–84; Report of Dr. E.O. Hume, Record at 122; Report of psychological screening of Dr. Daniel Sweeney, Record at 127–28.

5. The ALJ's determination that plaintiff's impairment is not severe also conflicts with the regulations. 20 C.F.R. § 404.1521 sets guidelines for determining when an impairment is not severe and thus not disabling. A severe impairment is one which significantly limits an individual's mental ability to perform basic work activities. Plaintiff's mental illness falls squarely within this provision as it limits his ability to use judgment and to respond appropriately to supervisors, co-workers and usual work situations. Thus this impairment is severe. 20 C.F.R. § 404.1521(b)(4) and (5).

able to perform "work-related activities;"[6] a different standard cannot be employed, in this day and age, for persons forced to remain in a hospital for mental reasons.[7]

For the reasons stated, there is no "substantial evidence" to support the ALJ's findings, and reversal is required on that basis alone. *Lewis v. Weinberger*, 541 F.2d 417, 421 (4th Cir.1976).

Second. All the medical witnesses testified that plaintiff will require continued hospitalization because of his mental condition and his continued dangerousness to others. Thus, Dr. Daniel Sweeney stated that plaintiff "appears physically able to work as evidenced by his employment prior to coming to the hospital. He is, however, in need of further hospitalization as a result of his potential dangerousness to others." Record at 128. Dr. Paul J. Peckar similarly found that plaintiff remained mentally ill and dangerous as a result of mental illness, and he further stated that

> With regards to Mr. Graves' capacity to engage in work it is my opinion together with that of the treatment team that Mr. Graves is severely disabled from working because of his extreme explosive rage and the repressed anger that lies behind it. It will be sometime before Mr. Graves is ready to return to the work force, but his treatment is progressing although ever so slowly.

Record at 2B. And Dr. E.O. Hume checked off a box on a form indicating that plaintiff was not capable of engaging in competitive employment, but then went on to state "Capable, but is currently hospitalized on a locked ward having been found not guilty by reason of insanity."[8] Record at 123.

■ This is not a case where the ALJ had to weigh conflicting medical testimony.[9] Instead, it is a case where it is the unanimous medical opinion[10] that plaintiff's mental illness requires his hospitalization in a secure ward because otherwise his inability to control his rage, caused by mental illness, makes him a danger to the community. In such circumstances, the ALJ had the duty, as a matter of law, not to disregard the opinions of the medical experts—a duty which he failed to fulfill.[11]

■ Moreover, the medical opinions are fully supported by the objective facts. There is, in the first place, plaintiff's court-ordered confinement in a mental hospital.[12] Beyond that, there is uncontradicted evidence that plaintiff has a long history of bizarre behavior, which includes the cutting off of heads of chickens and drinking their blood; enjoying pain; being able to spit up blood at will; and inability to control his rages, particularly in relation to women.[13] At St. Elizabeth's itself, plaintiff has become abusive at women; "threw chairs and punched the wall" in his anger at a woman therapist; on one occasion he went into an extreme rage over a trivial matter; and on another he attacked another patient in a rage which would have resulted in murder

6. See, *e.g., Doe v. Harris,* 495 F.Supp. 1161, 1170 (S.D.N.Y.1980), questioning whether the Secretary would require a plaintiff who was hospitalized or quarantined by reason of a physical impairment to prove inability to work if released.

7. It is difficult to visualize what the ALJ might have meant in that regard in this context. How would plaintiff engage in work-related activities in the community while he is confined because of mental illness in a locked ward at St. Elizabeth's?

8. It is symptomatic of the approach the ALJ took in this case that he distorted this statement in his evaluation of the evidence into the flat finding that plaintiff's "treating physician states that claimant is capable of employment." Record at 16.

9. See *Moss v. Gardner,* 411 F.2d 1195 (4th Cir. 1969).

10. Except for the ambiguous statement of Dr. Hume.

11. *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980); *Stawls v. Califano,* 596 F.2d 1209, 1213 (4th Cir.1979); *Wander v. Schweiker,* 523 F.Supp. 1086, 1095 (D.Md.1981).

12. This factor alone should have been given substantial weight. *Johnson v. Secretary,* 679 F.2d 605, 607 (6th Cir.1982).

13. Record at 86, 100.

had plaintiff not be restrained by the staff.[14]

It is this individual whom the ALJ found to have no "impairments which significantly limit his ability to perform basic work-related activities." Record at 16. This finding was patently erroneous.

Third. Most basically, the Act directs the ALJ and hence of the Secretary to determine whether a claimant should be expected to earn his living in the work force or whether he is so disabled, physically or mentally, that he cannot do so and should for that reason be granted disability benefits.[15] It surpasses understanding how the ALJ could conclude that this plaintiff could earn his living in the work force when he cannot even join that work force *on account of a disability* which keeps him confined in a hospital and is likely to keep him there for a long period of time.

## II

■ The Secretary also argues that plaintiff is foreclosed from obtaining disability benefits because of an amendment to the Social Security Act approved in 1980.

Section 339 of Public Law 98–21, approved October 20, 1983, added section 42 U.S.C. § 402(x)(1) to the Act, which provides, with exceptions not here relevant, that "... no monthly benefits shall be paid ... under section 423 of this title to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility, pursuant to his conviction of ... a felony...." Assuming that this provision can pass consti-

tutional muster,[16] it does not help the Secretary here, for two reasons.

First. The statute becomes operative only where there is a conviction of a felony; plaintiff was not convicted of a felony or any other offense; he was acquitted, albeit by reason of insanity. No tribunal has ever held, insofar as this Court is aware, that an acquittal by reason of insanity is a conviction for any purpose,[17] and the Secretary has furnished no indicia of legislative intent to the Court which would support so unusual a construction.

Second. Plaintiff is not confined in a "jail, prison, or other penal institution or correctional facility;" he is confined in a mental hospital. Here again, the government has produced no evidence that Congress intended to equate a mental hospital with a jail, prison, or other penal or correctional institution.

In short, the Secretary's reliance on the 1980 amendment is totally devoid of substance.

## III

For the reasons stated, the decision of the Secretary will be reversed.

---

14. Record at 2A.

15. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continued period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations *require* a finding of disability if a claimant has a severe impairment meeting the standards of Appendix 1. Even if a claimant's impairment is not a listed impairment, a finding of disability can be made if, after consideration

of the claimant's impairments, age, education and vocational skills, it is clear that there are no jobs available in the work place for that individual. See 20 C.F.R. § 404.1545–1569.

16. The constitutionality of this statute is presently being challenged in this Court in *Wiley v. Heckler*, C.A. No. 84–3478.

17. On this issue, too, there might well be substantial constitutional problems if the government were correct that Congress meant to treat this type of an acquittal as a conviction.