Thomas J. DAVEL, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 89–2003.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1990.

Decided May 14, 1990.

---

Jack Longert, Lisa Lietz, Robert Hanson, Legal Assistance to Institutionalized Persons, Madison, Wis., for plaintiff-appellant.

Michael C. Messer, Dept. of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, POSNER and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

Thomas J. Davel was found not guilty by reason of mental disease or defect of a charge of sexual contact with a person twelve years of age or under on June 15, 1983 in the courts of the State of Wisconsin. He was committed for a maximum of forty years to the Wisconsin Department of Health and Social Services, which placed him in the Mendota Mental Health Institute for treatment. Davel applied to the Secretary of Health and Human Services on August 4, 1986 for disability benefits. He was found to be totally disabled as of September 22, 1983 due to mixed personality disorder and dysthymic disorder/pedophilia, and benefit checks were sent to Davel at Mendota.

Davel made considerable progress in his treatment, and he eventually was given overnight passes out of the institution. But in 1985, while on an overnight pass, Davel made another sexual attack. He pleaded guilty to one count of second degree sexual assault, and on January 14, 1987, he was sentenced to eight years' imprisonment at the Dodge Correctional Institution. The state did not send Davel to Dodge, but returned him to Mendota. Both Dodge and Mendota are operated by the Department of Health and Social Services, and Davel receives credit against his eight-year term for time spent in Mendota. On March 1, 1987, the Social Security Administration informed Davel that his benefits were suspended as of January 1987 under 42 U.S.C. § 402(x) because from that date Davel was "confined in a jail, prison, or other penal institution or correctional facility, pursuant to his conviction of an offense which constituted a felony under applicable law." [1]

---

1. Davel also receives disability benefits from the Veteran's Administration. The VA has not cut off benefits on account of the later felony conviction. The VA's decision is, of course, not

Davel's request for reconsideration of the suspension of benefits was turned down, and the decision was affirmed by an Administrative Law Judge and by the Appeals Council. Davel appealed to the district court without success, and he now appeals to this Court.

Davel maintains that Congress did not intend the words "a jail, prison, or other penal institution or correctional facility" to include Mendota, at least under these circumstances.[2] He argues that prior to his conviction, he was plainly not being held in a correctional facility, and his circumstances have not changed at all as a result of the conviction; that he is in Mendota for treatment rather than for punishment, and that the eight-year felony sentence is irrelevant for all practical purposes. Davel's treatment has not been altered in any way by the fact of conviction, and the criminal sentence is almost certain to expire before Davel's release from civil commitment.

The Secretary responds that under his regulations, Davel's stay at Mendota is confinement in a correctional facility, irrespective of the fact that Davel lived there prior to his conviction. 20 C.F.R. § 404.468(c) reads:

> (c) Confinement. In general, a jail, prison, or other penal institution or correctional facility is a facility which is under the control and jurisdiction of the agency in charge of the penal system or in which convicted criminals can be incarcerated. Confinement in such a facility continues as long as the individual is under a sentence of confinement and has not been released due to parole or pardon. An individual is considered confined even though he or she is temporarily or intermittently outside of that facility (e.g., on work release, attending school, or hospitalized).

Because Mendota is under the jurisdiction of the Department of Health and Social Services, and because under Wisconsin law the Department may choose to have convicted felons serve their sentences at Mendota, Davel is serving his civil commitment and his criminal sentence concurrently. If Davel recovers from his mental illness before his criminal sentence expires, he will be required to serve the rest of his eight-year term, probably in a regular prison, even though he will be released from his civil commitment.

■ Davel urges us to find that the Secretary's regulation, as applied, is not a reasonable interpretation of the statute. He argues that a mental institution is not a prison, and that Wisconsin differentiates between prisoners and patients. We believe that the Secretary's interpretation is reasonable. Congress' language barring imprisoned felons from receiving benefits is mandatory—the Secretary is not given discretion to continue benefits to any incarcerated felon in any case. There is a real difference between persons civilly committed to Mendota and those criminally committed—the latter are there pursuant to felony convictions, and the statute by its terms requires that such persons not be given benefits. Davel is not free to leave the custody of the Wisconsin Department of Health and Social Services even if he suddenly regains his mental health, and the

binding on the Social Security Administration. *See Smith v. Secretary*, 587 F.2d 857, 861 (7th Cir.1978). The VA's decision is entitled to some weight, and should be considered, *id.*, but the Secretary is by no means required to acquiesce in the VA's conclusion. The ALJ considered the VA's decision, but disagreed with it.

2. Davel also makes an argument that he is not confined "pursuant to his conviction of an offense" because he was not sent to Dodge after his sentencing as the convicting court ordered. Under Wisconsin law, the Department of Health and Social Services may transfer inmates between the facilities it operates, including Mendota Mental Health Institute. Wis.Stat. 51.-37(5). It does not appear from the record that the State complied with the formalities it usually requires for transfer from Dodge to Mendota, but lack of formality is not relevant to determining whether Davel is confined pursuant to a felony conviction. Davel is receiving credit against his criminal sentence for time spent in treatment at Mendota. The details of his placement within the state penal system are unimportant to the Social Security question, so long as Davel is "confined" pursuant to a conviction. The ALJ and the Appeals Council found that Davel is in Mendota pursuant to both the civil commitment and the criminal conviction, and that finding is supported by substantial evidence.

reason he is not free is that he has been convicted of a violent felony.

Davel contends that his situation is functionally identical to that considered in *Graves v. Heckler*, 607 F.Supp. 1186 (D.D.C.1985). In *Graves*, the court held that benefits should not be suspended under 42 U.S.C. § 402(x) when the claimant was committed to a mental hospital after a verdict of not guilty by reason of mental defect. The difference between that fact situation and this one is that Davel is serving two concurrent commitments—one civil (like Graves) and one criminal. Davel's argument is that the difference is irrelevant—that commitment and incarceration are mutually exclusive, and that he is merely committed. We disagree. Section 402(x) is written in broad language: Congress used the word "confined" rather than "jailed" or "incarcerated." The phrase "other penal institution or correctional facility" implies a broad understanding of the terms. The state need not treat a prisoner badly after conviction of crime; rehabilitation is a reasonable goal of a penal system. We see no logical inconsistency in the holding that Davel could be simultaneously committed and incarcerated, and because Congress demands that, all other considerations notwithstanding, persons confined pursuant to felony conviction are not to receive benefits.

Davel next points to legislative history identifying the purposes of the suspension of convicts' benefits to support his argument that the Secretary acted unreasonably. The most important reason given for the restriction is that there was no need to use scarce benefit funds for persons whose basic needs are met by the prison. Sen. Rep. No. 987, 96th Cong., 2d Sess. 7–9 (1980). Another is that relatively large amounts of money in the hands of a prisoner could cause discipline problems. *Pace v. United States*, 585 F.Supp. 399 (S.D.Tex. 1984). We agree with Davel that neither of these reasons has any application to his circumstances. Davel is being billed by the

State of Wisconsin for his care.[3] If benefits are resumed, the State will have the right to try to collect the amounts owing it. Furthermore, because Davel's manner of life is exactly the same as it was before his conviction, and because Davel received benefits without incident before he was convicted, there is no real argument that a discipline problem will be created by the resumption of benefits.

The Secretary admitted at oral argument that Congress and the Social Security Administration probably never considered a case like Davel's in writing the statute and the regulations. But Congress can make a law with broader effects than the purposes that called the law forth. *Federal Deposit Ins. Corp. v. O'Neil*, 809 F.2d 350, 353 (7th Cir.1987). The purposes of a statute are not the law: only the statute is the law. The words of the statute, not the words of the legislative history, control statutory interpretation. *In re: Sinclair*, 870 F.2d 1340 (7th Cir.1989). We will uphold an administrative interpretation of a statute if it is reasonable. *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). While we will not uphold an administrative interpretation that runs contrary to the intent of the legislature, *Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Rel. Auth.*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), we are not presented with such a case. If the Congressional policy was to avoid an unnecessary drain on social security funds, the Secretary's interpretation does not defeat that purpose. Davel's argument is really that the Secretary has gone too far in effecting the will of Congress; that the statute and regulations are not neatly tailored to fulfill their purpose in this concededly unusual case. But when Congress chooses not to leave a matter to case-by-case adjudication, there are necessarily situations in which the chosen rule of decision will be underinclusive or overinclu-

---

**3.** It does not appear that Wisconsin has made any effort to collect from Davel. There was no deduction made from Davel's social security benefits before they were suspended, nor is any

deduction taken from Davel's Veteran's Administration benefits. On the date of Davel's conviction, he owed the State of Wisconsin $261,-045.

sive. *See United States v. Medico Industries, Inc.*, 784 F.2d 840, 844 (7th Cir.1986); *American Hosp. Ass'n v. NLRB*, 899 F.2d 651, 659–60 (7th Cir.1990). This is not a reason to ignore or reinterpret a statute. The benefits of a predictable rule of law are not insignificant. *American Hospital Ass'n.*

AFFIRMED.