**Brett E. WILKINS, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

No. 96–4006–SAC.

United States District Court,
D. Kansas.

Dec. 19, 1996.

Kelly C. Brown, Kenneth M. Carpenter, Carpenter Chartered, Topeka, KS, for Brett E. Wilkins.

Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, for Shirley S. Chater.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On August 4, 1988, Brett E. Wilkins filed an application for disability benefits under Title II of the Social Security Act.[1] In that application, Wilkins alleged that he suffered from several impairments including chronic paranoid schizophrenia, mixed personality disorder and substance abuse disorder. On August 31, 1989, Wilkins was awarded social security benefits.

On January 13, 1992, Wilkins was convicted of one felony count of forgery in violation of K.S.A. 21–3710. On May 14, 1992, after receiving and reviewing a report prepared by the State Reception and Diagnostic Center pursuant to K.S.A. 22–3429, the District Court of Shawnee County, Kansas, Division Eleven, entered an order titled "Commitment for Care, Treatment and Maintenance Pursuant to the Provisions of K.S.A. 22–3430, With Order to Transport and Return." In pertinent part, that order states:

The Court, after receiving and reviewing the report of the State Reception and Diagnostics Center prepared pursuant to K.S.A. 22–3429 and after hearing the arguments and statements of counsel and being otherwise fully and duly advised in the premises, finds and concludes as follows:

1. That the defendant herein has been convicted of the crime of Forgery;

2. That the defendant is in need of psychiatric care and treatment;

3. That psychiatric care and treatment may materially aid in the defendant's rehabilitation;

4. That the defendant and society are not likely to be endangered by permitting the defendant to receive such psychiatric care and treatment, in lieu of confinement or imprisonment;

5. The defendant should be committed to the Larned State Security Hospital for psychiatric care, treatment and maintenance pursuant to the provisions of K.S.A. 22–3430 until further order of this Court or until discharge pursuant to K.S.A. 22–3431; and

6. That the penalty sections for the crime or crimes of which the defendant had been convicted are as follows: K.S.A. 22–4501(e).

On May 28, 1992, pursuant to the state district court's May 14, 1992, order, Wilkins was admitted to Larned State Security Hospital in Larned, Kansas.

Based upon his felony conviction, in May of 1992, and under the authority granted by 42 U.S.C. § 402(x)(1), the Social Security Administration suspended Wilkins' disability benefits. On June 18, 1992, Wilkins' attorney provided the Topeka, Kansas, Social Security Office with a copy of the May 14, 1992, order titled "Commitment for Care, Treatment and Maintenance Pursuant to the Provisions of K.S.A. 22–3430, With Order to Transport and Return." Wilkins argued that the May 14, 1992, order did not confine or incarcerate him in a penal institution and therefore the suspension of his benefits was incorrect under § 402(x)(1). On August 13, 1992, the Social Security Administration issued a "Notice of Change in Benefits", indicating that Wilkins had received an overpayment in May, 1992, due to the fact that he was "imprisoned for the conviction of a crime considered to be a felony. The facts we have do not show that you are in a rehabilitation program that would make it possible for us to pay you."

After considering the reports and recommendations of the personnel at Larned State Security Hospital, on November 23, 1993,

---

1. "There are two social security disability benefit programs—Disability Insurance, for people who have qualified for social security benefits by paying social security taxes for the relevant period, and Supplemental Security Income, for people who have not. But the pertinent regulations are the same for the two programs." *Eads v. Secretary of DHHS*, 983 F.2d 815, 816 (7th Cir.1993).

state District Court Judge Dowd placed Wilkins on probation for a duration of twelve months. Based upon his release from confinement, the Social Security Administration reinstated Wilkins' disability benefits in December 1993.

On December 20, 1993, Wilkins' request for reconsideration of the August 20, 1992, decision by the Social Security Administration was denied. Wilkins subsequently requested a hearing before an Administrative Law Judge. Wilkins waived his personal appearance but submitted written memoranda in support of his position.

On May 15, 1995, the ALJ issued an unfavorable decision on Wilkins' claim. Summarized, the ALJ concluded that Wilkins' felony conviction and subsequent confinement to a state mental institution in lieu of prison constituted "confinement" within the meaning of § 402(x)(1). The ALJ also rejected Wilkins' contention that he participated in a "rehabilitation program" within the meaning of an exception that then existed in 42 U.S.C. § 402(x)(1). Although the ALJ considered the Veterans Administration's (VA) decision to continue to pay benefits to Wilkins although he had committed a felony, the ALJ found that the "VA has it's (sic) own criteria for individuals to receive their benefits. That criteria in no way has any bearing on what the Social Security disability criteria is and does not have any relationship to this decision." Wilkins' request for review by the Appeals Council was denied. Consequently the decision of the ALJ stands as the final decision of the Commissioner. Wilkins subsequently filed this action in federal court, seeking review of the final decision of the Commissioner.

### Standard of Review

The court reviews "the [Commissioner]'s decision to deny benefits to determine whether it is supported by substantial evidence and whether she applied the correct legal standards." *Cruse v. U.S. Dept. of Health & Human Services,* 49 F.3d 614, 616–617 (10th Cir.1995); see 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401–02,

91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971); *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). "A finding of ' "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." ' " *Trimiar v. Sullivan,* 966 F.2d 1326, 1328 (10th Cir.1992) (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983) (quoting *Hemphill v. Weinberger,* 483 F.2d 1137 (5th Cir. 1973)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994) (citation omitted). "Incorrect application or insufficient evidence of correct application of governing legal standards is grounds for reversal." *Cruse,* 49 F.3d at 617. See *Tibbits v. Shalala,* 883 F.Supp. 1492, 1493 (D.Kan.1995) (summarizing standard of review).

### Arguments of the Parties

Summarized, Wilkins makes the following arguments in support of his contention that the Commissioner wrongly suspended his disability benefits during the time he was confined at Larned:

1. Commitment under K.S.A. 22–3420 is not confinement or imprisonment within the meaning of § 402(x)(1).

2. His continued receipt of benefits while committed in lieu of being incarceration would not have violated the underlying purpose of the Social Security Act.

3. The 1994 amendment to § 402(x) suggests that prior to the effective date of that amendment, a person such as Wilkins was intended to receive social security benefits.

4. Based upon his participating in a rehabilitation program while at Larned, he fell within an exception set forth in § 402(x) as it existed in 1992 and 1993.

5. The Commissioner failed to give proper consideration to the VA's decision to not suspend benefits during the time he was committed to Larned.

The Commissioner responds, reaffirming the findings and interpretations made by the ALJ. The Commissioner contends that the legislative history of § 402(x) and the case law interpreting that section supports her

decision to suspend Wilkins' benefits while he was confined at Larned. As Wilkins' reply brief correctly notes, the Commissioner's brief fails to expressly address his contention that the 1994 amendment suggests that a person in his position should not have had his benefits suspended under § 402(x) as it existed in 1992 and 1993.

### Statutory Scheme

"Participation in the social security system is a noncontractual social welfare benefit." *Buccheri–Bianca v. Heckler,* 768 F.2d 1152, 1154 (10th Cir.1985). "The goal of social security is to replace a worker's lost earnings." *Id.*

Disturbed by the fact that convicted criminals continued to receive social security benefits while confined at the public's expense, in 1980 section 223 of the Social Security Act was amended to suspend payments to confined, convicted felons. *See Washington v. Secretary of Health & Human Services,* 718 F.2d 608, 610 (3rd Cir.1983) (discussing the Act of October 19, 1980, Pub.L. No. 96–473, 94 Stat. 2263, 2265; codified at 42 U.S.C. § 423(f)(1)).

In Senate Report No. 96–987, 96th Cong., 2nd Sess., upon the bill, H.R. 5295, which became the Act of 1980, the committee stated:

> The committee believes that the basic purposes of the social security program are not served by the unrestricted payment of benefits to individuals who are in prison or whose eligibility arises from the commission of a crime. The disability program exists to provide a continuing source of monthly income to those whose earnings are cut off because they have suffered a severe disability. The need for this continuing source of income is clearly absent in the case of an individual who is being maintained at public expense in prison. The basis for his lack of other income in such circumstances must be considered to be marginally related to his impairment at best.
>
> The committee bill therefore would require the suspension of benefits to any individual who would otherwise be receiving them on the basis of disability while he is imprisoned by reason of a felony conviction. This suspension would apply except to the extent that a court of law specifically provides to the contrary as a part of its approval of a plan of vocational rehabilitation services for that individual, and only for so long as the individual continues to participate satisfactorily in an approved vocational rehabilitation program which is expected to result in his return to substantial gainful employment.

1980 U.S.Code Cong. & Ad.News 4787, 4794–4795. 718 F.2d at 610. *See Buccheri–Bianca,* 768 F.2d at 1154–55 ("Because a convicted felon ... is maintained at public expense, he has no need for a continuing source of social security income."). Title 42, section 402(x) is the successor to 42 U.S.C. § 423(f)(1). *See Buccheri–Bianca,* 768 F.2d at 1154. Section 402(x) has withstood constitutional challenges alleging that it violates equal protection, due process and double jeopardy, as well as arguments that it is a bill of attainder or ex post facto law. *Jones v. Heckler,* 774 F.2d 997, 998–99 (10th Cir. 1985).

In 1992, § 402(x)(1) provided:

(x) Limitation on payments to prisoners

(1) Notwithstanding any other provision of this subchapter, no monthly benefits shall be paid under this section or under section 423 of this title to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility, pursuant to his conviction of an offense which constituted a felony under applicable law, unless such individual is actively and satisfactorily participating in a rehabilitation program which has been specifically approved for such individual by a court of law and, as determined by the Secretary, is expected to result in such individual being able to engage in substantial gainful activity upon release and within a reasonable time.

In 1992, 20 C.F.R. § 404.468, Nonpayment of benefits to prisoners, provided:

(a) General. No monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or

# 1196

correctional facility for conviction of a felony. This rule applies to disability benefits (§ 404.315) and child's benefits based on disability (§ 404.350) effective with benefits payable for months beginning on or after October 1, 1980. For all other monthly benefits, this rule is effective with benefits payable for months beginning on or after May 1, 1983. However, it applies only to the prisoner; benefit payments to any other person who is entitled on the basis of the prisoner's wages and self-employment income are payable as though the prisoner were receiving benefits.

(b) Felonious offenses. An offense will be considered a felony if—

(1) It is a felony under applicable law; or

(2) In a jurisdiction which does not classify any crime as a felony, it is an offense punishable by death or imprisonment for a term exceeding one year.

(c) Confinement. In general, a jail, prison, or other penal institution or correctional facility is a facility which is under the control and jurisdiction of the agency in charge of the penal system or in which convicted criminals can be incarcerated. Confinement in such a facility continues as long as the individual is under a sentence of confinement and has not been released due to parole or pardon. An individual is considered confined even though he or she is temporarily or intermittently outside of that facility (e.g., on work release, attending school, or hospitalized).

(d) Vocational rehabilitation exception. The nonpayment provision of paragraph (a) of this section does not apply if a prisoner who is entitled to benefits on the basis of disability is actively and satisfactorily participating in a rehabilitation program which has been specifically approved for the individual by court of law. In addition, the Secretary must determine that the program is expected to result in the individual being able to do substantial gainful activity upon release and within a reasonable time. No benefits will be paid to the prisoner for any month prior to the approval of the program.

In 1994, Congress amended § 402(x). In pertinent part it now provides:

(x) Limitation on payments to prisoners and certain other inmates of publicly funded institutions

(1)(A) Notwithstanding any other provision of this title, no monthly benefits shall be paid under this section or under section 423 of this title to any individual for any month during which such individual—

(i) is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense punishable by imprisonment for more than 1 year (regardless of the actual sentence imposed), or

(ii) is confined by court order in an institution at public expense in connection with—

(I) a verdict or finding that the individual is guilty but insane, with respect to an offense punishable by imprisonment for more than 1 year,

(II) a verdict or finding that the individual is not guilty of such an offense by reason of insanity,

(III) a finding that such individual is incompetent to stand trial under an allegation of such an offense, or

(IV) a similar verdict or finding with respect to such an offense based on similar factors (such as a mental disease, a mental defect, or mental incompetence).

(B)(i) For purposes of clause (i) of subparagraph (A), an individual shall not be considered confined in an institution comprising a jail, prison, or other penal institution or correctional facility during any month throughout which such individual is residing outside such institution at no expense (other than the cost of monitoring) to such institution or the penal system or to any agency to which the penal system has transferred jurisdiction over the individual.

(ii) For purposes of clause (ii) of subparagraph (A), an individual confined in an institution as described in such clause (ii) shall be treated as remaining so confined until—

(I) he or she is released from the care and supervision of such institution, and

(II) such institution ceases to meet the individual's basic living needs....

With this background, the court will consider each of Wilkins' arguments *seriatim.*

## Confinement

 Wilkins correctly notes that the state court's May 14, 1992, order states that he was placed at Larned for psychiatric care and treatment "in lieu of confinement or imprisonment," and that the May 14, 1992, order essentially tracks the language of K.S.A. 22–3430. However, despite the terminology used by the state in describing the treatment and location of Wilkins following the guilty verdict, he was a "confined" felon in a "correctional facility" within the meaning of § 402(x). Other courts have rejected arguments similar to the one advanced by Wilkins. *See Quintal v. Secretary of Health and Human Services,* 42 F.3d 1384 (1st Cir.1994) (available on Westlaw 1994 WL 716020) ("We think that it is fair to say that claimant is 'confined' in a 'correctional facility' during the period he serves his criminal sentence at a treatment center. Claimant is certainly 'confined,' for he is not free to depart."); *Davel v. Sullivan,* 902 F.2d 559 (7th Cir. 1990); *cf., Josephson v. Sec. of HHS,* 1994 WL 746630 (W.D.Mich. Nov. 17, 1994) ("Plaintiff was 'confined' within the meaning of the statute and regulation while electronically monitored in the community residential home.").

In *Davel,*[2] the claimant was convicted of a felony and sentenced to prison. Instead of sending Davel to prison, the state returned him to the mental institution where he had previously been placed to receive treatment. Davel challenged the suspension of his social security benefits, arguing that Congress did not intend the words "jail, prison, or other penal institution or correctional facility" to include a mental institution such as the one he was assigned to. The Seventh Circuit rejected his argument:

Davel urges us to find that the Secretary's regulation, as applied, is not a rea-

sonable interpretation of the statute. He argues that a mental institution is not a prison, and that Wisconsin differentiates between prisoners and patients. We believe that the Secretary's interpretation is reasonable. Congress' language barring imprisoned felons from receiving benefits is mandatory—the Secretary is not given discretion to continue benefits to any incarcerated felon in any case. There is a real difference between persons civilly committed to Mendota and those criminally committed—the latter are there pursuant to felony convictions, and the statute by its terms requires that such persons not be given benefits. Davel is not free to leave the custody of the Wisconsin Department of Health and Social Services even if he suddenly regains his mental health, and the reason he is not free is that he has been convicted of a violent felony.

Davel contends that his situation is functionally identical to that considered in *Graves v. Heckler,* 607 F.Supp. 1186 (D.D.C.1985). In *Graves,* the court held that benefits should not be suspended under 42 U.S.C. § 402(x) when the claimant was committed to a mental hospital after a verdict of not guilty by reason of mental defect. The difference between that fact situation and this one is that Davel is serving two concurrent commitments—one civil (like Graves) and one criminal. Davel's argument is that the difference is irrelevant—that commitment and incarceration are mutually exclusive, and that he is merely committed. We disagree. Section 402(x) is written in broad language: Congress used the word "confined" rather than "jailed" or "incarcerated." The phrase "other penal institution or correctional facility" implies a broad understanding of the terms. The state need not treat a prisoner badly after conviction of crime; rehabilitation is a reasonable goal of a penal system. We see no logical inconsistency in the holding that Davel could be simultaneously committed and incarcerated, and because Congress demands that, all other considerations notwithstanding,

---

**2.** The ALJ in Wilkins' case relied heavily upon the holding and reasoning of the Seventh Cir-

cuit's opinion in *Davel* in rendering his decision in this case.

persons confined pursuant to felony conviction are not to receive benefits.

902 F.2d at 559–60.

This case is similar to the facts of *Davel*. Absent a court order granting him release from confinement, Wilkins was not free to leave Larned. Despite the nomenclature used by the State of Kansas in placing convicted felons such as Wilkins at Larned for treatment, commitment to the Larned Security Hospital constitutes confinement within the meaning of § 402(x).

Contrary to his suggestion, Wilkins is not similarly situated to the claimant in *Graves v. Heckler*, 607 F.Supp. 1186 (D.D.C.1985). In *Graves*, the court held that benefits should not be suspended under § 402(x) when the claimant was committed to a mental hospital following a verdict of not guilty by reason of insanity. Unlike the claimant in *Graves*, Wilkins was found guilty of a felony, the necessary predicate to suspension of benefits under § 402(x). *See Davel*, 902 F.2d at 562 (distinguishing *Graves* on the same basis).

The court rejects Wilkins' contention that the 1994 amendments prove that the Social Security Administration wrongly withheld his benefits in 1992 and 1993. The court agrees that Wilkins' entitlement to benefits should be determined under the law as it existed during 1992 and 1993. *Cf. Quintal*, 1994 WL 716020 at *4 n. 1 (noting recent amendments to § 402(x) but only utilizing version in effect prior to 1994 amendments in analyzing plaintiff's claim). Wilkins' brief, however, then contains a somewhat confusing analysis concerning the Constitution's prohibition of ex post facto laws.[3] Wilkins contends that § 402(x) does not violate the prohibition against ex post facto laws, but proceeds to argue that the 1994 amendments neverthe-

less should not be applied to his case. Wilkins' ex post facto observations hardly advance his position, as those arguments in no way demonstrate that the 1994 amendment should not be applied retroactively. So that there is no confusion, in determining whether the Commissioner's decision to suspend benefits is based upon a proper application of the law, the court has not applied the 1994 amendments to Wilkins' claim. In fact, it is clear that Congress did not intend the 1994 amendments to apply retroactively:

> On October 22, 1994, President Clinton signed the Social Security Domestic Employment Reform Act of 1994, Pub.L. No. 103–387, into law. This Act amended 42 U.S.C. § 402(x)(1) "with respect to benefits for months commencing after 90 days after the date of the enactment of this Act." Pub.L. No. 103–387, § 4(b). Effective January 20, 1995, the statute will provide that, "for purposes of clause (i) of subparagraph (A), an individual shall not be considered confined in an institution comprising a jail, prison, or other penal institution or correctional facility during any month throughout which such individual is residing outside such institution at no expense (other than the cost of monitoring) to such institution or the penal system or to any agency to which the penal system has transferred jurisdiction over the individual." Pub.L. No. 103–387, § 4(a)(2)(B)(i). Congress clearly elected not to make this change retroactive, and the 1994 Act has no impact upon this case, which involves benefits between July, 1991 and August, 1992. The court has, however, considered the 1994 amendments in determining the scope of § 402(x) as it existed prior to 1994.

---

3. "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. 1, § 9, cl. 3. "The purpose of the Ex Post Facto Clause is ' "to restrain legislatures and courts from arbitrary and vindictive action and to prevent prosecutions and punishment without fair warning." ' " *United States v. Aranda–Hernandez*, 95 F.3d 977 (10th Cir.1996) (quoting *United States v. Gerber*, 24 F.3d 93 (10th Cir.1994) (quoting *Devine v. New Mexico Dep't of Corrections*, 866 F.2d 339 (10th Cir.1989))), *petition for cert. filed* Nov. 18, 1996. "In order for a violation of the Clause to occur, a law must apply to ' "events occurring before its enactment" ' and must ' "disadvantage the offender affected by it." ' " *Id.* (quoting *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987))). "An ex post facto law is one that (1) criminalizes conduct that was legal when done; (2) inflicts greater punishment for an offense than was inflicted by the law in existence at the time the offense was committed; or (3) eliminates a defense available according to law at the time the offense was committed." *United States v. Hampshire*, 95 F.3d 999, 1005 (10th Cir.1996).

*Josephson,* 1994 WL 746630 at *5 n. 2. *See Green v. Nottingham,* 90 F.3d 415, 418 (10th Cir.1996) ("To determine the temporal scope of new legislation, we consider first 'whether Congress has expressly prescribed the statute's proper reach.'") (quoting *Landgraf v. USI Film Prods.,* 511 U.S. 244, 280–81, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994)). The court has, however, considered the 1994 amendments in determining the intended scope of § 402(x) as it existed prior to 1994.

From its plain language and its legislative history, it is clear that one of the primary purposes of the 1994 amendments was to broaden the scope of § 402(x) to include persons who are determined to be criminally insane or incompetent to stand trial:

Present law

Individuals who are confined to a prison, jail, or other penal institution or correctional facility as the result of a felony conviction are barred from receiving Social Security benefit payments. (Qualified family members of such individuals may continue to receive benefits). An exception is provided for imprisoned felons who are satisfactorily participating in a court-approved program of rehabilitation which the Secretary of Health and Human Services has determined is likely to result in the individual's return to work upon release from prison. During 1993, the Secretary processed a total of 16 applications for exceptions to this limitation, of which one was granted approval. The Social Security Act provides no limitation on benefit payments to individuals who are confined to an institution by court order at public expense pursuant to a verdict that they are not guilty of an offense by reason of insanity.

Explanation of provision

The provision would broaden the current limitation on Social Security benefits to incarcerated felons and extend this limitation to criminally insane individuals confined to institutions by court order at public expense. In making these changes, the Committee is seeking to establish greater consistency in the policy that Congress enacted in 1980 banning Social Security benefit payments to incarcerated felons.

That limitation recognizes that prisoners receive full support from public resources in the form of food, clothing, lodging, and basic health care. In the Committee's view, the same situation exists in the case of criminally insane individuals who are confined to institutions at public expense. The provision would:

Apply the limitation on benefit payments, which currently extends only to incarcerated felons, to all individuals convicted of an offense punishable by imprisonment for more than one year. Because the definition of a felony varies from State to State, the change would equalize the application of the limitation among the States;

Repeal the exception to the limitation for inmates participating in court-approved rehabilitation (for which the Secretary has received and approved few applications, as illustrated above); and

Extend the limitation to criminally insane individuals who are confined to institutions by court order at public expense in connection with an offense punishable by imprisonment of more than one year. For the third category, the court order must be issued in connection with a verdict of guilty but insane, a verdict of not guilty by reason of insanity, a finding of incompetence to stand trial, or a similar verdict or finding based on similar factors (such as mental disease, mental defect, or mental incompetence). The limitation would continue to apply until such time as the individual is unconditionally released from the care and supervision of the institution to which he or she was committed, so long as the institution continues to cover the cost of the individual's basic living needs.

H.R.Rep. No. 103–491, at 7–8 (1994), 1994 U.S.C.C.A.N. 3266, 1994 WL 178576 (Leg. Hist.). The 1994 amendments closed a perceived gap in the social security laws. That same gap is the one that allowed the claimant in *Graves* to continue to receive social security benefits after being found not guilty by reason of insanity. Because Wilkins did not fall into that same gap, he cannot reasonably contend that the 1994 change in the law

demonstrates that he was entitled to benefits under the law as it existed prior to 1994.

### Rehabilitation

At the time Wilkins' benefits were suspended,[4] § 402(x)(1) had one exception to the suspension of social security benefits. Benefits were to be suspended unless the confined felon "actively and satisfactorily participating in a rehabilitation program which has been specifically approved for such individual by a court of law and, as determined by the Secretary, is expected to result in such individual being able to engage in substantial gainful activity upon release and within a reasonable time." The Seventh Circuit has described this provision of the statute, as it bears on the judicial role, as "sparse and enigmatic." *United States v. Osborne,* 988 F.2d 47, 49 (7th Cir.1993).

■ The ALJ found that Wilkins, during the time he was confined at Larned, was not participating in a vocational rehabilitation program specifically approved by the Kansas District Court. That finding is supported by the administrative record and the plain language of the statute. Although Wilkins received medical treatment while at Larned, that treatment does not satisfy the exception contained in § 402(x). *Cf. Calaf v. Secretary of Health and Human Services,* 1994 WL 405744, at *3 (D.Mass. Aug. 1, 1994).

### Veteran's Administration Decision

■ Wilkins contends the ALJ gave improper weight to the VA's decision not to suspend his veterans' benefits. The Seventh Circuit rejected a similar argument in *Davel:*

> The VA's decision is, of course, not binding on the Social Security Administration. *See Smith v. Secretary,* 587 F.2d 857, 861 (7th Cir.1978). The VA's decision is entitled to some weight, and should be considered, *id,* but the Secretary is by no means required to acquiesce in the VA's conclusion. The

ALJ considered the VA's decision, but disagreed with it.

*Davel,* 902 F.2d at 560 n. 1. In the case at bar, the ALJ considered but rejected the VA's determination for essentially the same reasons accepted by the court of appeals in *Davel.* For the same reasons articulated in *Davel,* the court finds that the ALJ properly considered but was not bound by the VA's decision not to suspend Wilkins' veterans' benefits.

### Summary

The court concludes that the Commissioner's decision is supported by substantial evidence that she applied the correct legal standards in suspending Wilkins' social security benefits while he was confined at Larned Security Hospital.

IT IS THEREFORE ORDERED that the Commissioner's decision to suspend Wilkins' benefits during the time he was confined at Larned is affirmed.

---

4. "The rehabilitation exception has been eliminated for benefits paid beginning February 1995." *Rowden v. Warden,* 89 F.3d 536, 537 n. 2 (8th Cir.1996) (citing Social Security Domestic Employment Reform Act of 1994, Pub.L. No. 103–387, § 4, 1994 U.S.C.C.A.N. (108 Stat.) 4071, 4076). The legislative history indicates the rehabilitation provision was repealed based upon the limited number of received and approved applications by persons seeking to qualify for that exception. *See* H.R.Rep. No. 103–491, at 7–8 (1994).