149 So.2d 465

Edward RIDDLE

v.

STATE.

8 Div. 873.

Court of Appeals of Alabama.

Jan. 29, 1963.

Ralph E. Slate, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and Dwight W. Bradley, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant stands convicted of murder in the second degree with sentence to the penitentiary for a term of ten years.

It is undisputed in the evidence that one Billy· Van. Jennings, defendant's brother-in-law, died from a gunshot wound inflicted by the defendant. The evidence for the state tends to show a deliberate and intentional killing while that for the defendant tends to show the shooting was in self defense.

We have carefully searched the record and find only one question which merits discussion, that is, the sufficiency of the predicate for admission of·deceased's dying declarations made to his wife and sister-in-law.

The defendant and his wife were the only eye witnesses to the shooting. They testified deceased was in the defendant's yard when he was shot and that he got back in his car and drove away. Deceased's three year old daughter was in the automobile with her father.

The state's evidence discloses that deceased stopped at the home of a Mr. Speegle and told Mr.· Speegle six to ten times that he was dying and that defendant had shot him. Deceased got out of his car and lay down on·a bank while Mr. Speegle went to call an ambulance, but he got back into his car and drove away before the call could be completed. Immediately thereafter deceased's wife and sister-in-law drove up and inquired as to the direction in which deceased had gone and they caught up with deceased at Woodrow Robert's house, which was in sight of the Speegle home. They got into the car with deceased and his wife drove the automobile to the hospital.

Enroute to the hospital deceased made certain statements which Mrs. Jennings and Mrs. Bartlett were permitted, over objection, to give in evidence. Mrs. Jennings testified her husband stated defendant shot him and said he was going to kill deceased and his little girl; that deceased requested that his pastor, Reverend Stewart, be called, and told her to pay an overdue premium on his life insurance policy. Mrs. Bartlett stated that deceased told his wife to "pay up the life insurance policy," to "carry him to the hospital and get him a carload of

doctors, that he would need them * * *;" and to call the pastor of his church and ask him to come to the hospital. She also testified deceased said defendant, when he first saw him, was between his home and Red Oak Church and that he stopped his car and defendant made him go home with him and when they got there made him get out of the automobile and shot him.

In Gilmer v. State, 181 Ala. 23, 61· So. 377, it is said:

"It is not an indispensable prerequisite· to the admission of a dying declaration that the deceased should, in so many words, express a conviction that he is in extremis, that death is impending, and that he has no hope of life; but such a declaration is admissible when, after a careful consideration of all the circumstances, the judicial mind is convinced, by legally sufficient evidence, that, at the time the declaration was made, the deceased was in extremis, that he believed death to be impending, and that he entertained no hope of life." See also Hussey v. State, 87 Ala. 121, 6 So. 420; Thomas v. State, 31 Ala.App. 1, 9 So.2d 150.

Among the circumstances tending to show declarant's belief in his impending death are the nature of his injuries or state of his illness, the fact that he requested that a minister be called, final arrangement of his business affairs, and the like. 40 C.J.S. Homicide, § 295, pp. 1266, 1267.

The request by deceased that physicians be called does not necessarily indicate a hope of cure, so as to render his dying declarations inadmissible. McQueen v. State, 103 Ala. 12, 15 So. 824; Lightner v. State, 195 Ala. 687, 71 So. 469; 40 C.J.S. Homicide, supra.

The wound was inflicted by a twenty-two rifle. The bullet punctured the abdominal wall and severed a large artery. The·surgeon testified the abdominal cavity was completely filled with blood, estimated at eight pints, and that cause of death was

"irreversible shock" resulting from loss of blood. The shooting occurred between 6:30 and 7:00 p. m. Death occurred next morning at 7:30.

Under all the circumstances shown, we are of the opinion the court did not err in admitting the testimony of deceased's wife and sister-in-law as to his statements to them, though no showing was made that he expressly stated in their presence that he was without hope of recovery or was going to die.

There is no error apparent in the record, and the judgment is due to be affirmed.

Affirmed.

JOHNSON, J., recuses self.