The grand jury of Mobile County returned an indictment against the appellant, Lovett Young, Jr., alias Curley Young, charging him with the first degree murder of Frank Broadnax by shooting him with a gun. Appellant entered a plea of not guilty. A jury found the appellant guilty of murder in the first degree and fixed his punishment at imprisonment for life. The trial court entered a judgment in accordance with the verdict, and appellant appeals to this Court.
The appellant is now, and was at all proceedings in the trial court, represented by court appointed counsel. This appeal was submitted to this Court on briefs.
The appellant states in his brief three reasons why his conviction should be reversed: first, the evidence is not sufficient to sustain the jury verdict of murder in the first degree; second, denying appellant's motion to suppress a dying declaration; third, improper conduct of the Assistant District Attorney which denied the appellant a fair trial.
State's evidence tended to prove that at about eleven o'clock, A.M. on the 26th day of September, 1976, the stepfather of deceased carried him in a car over to appellant's house and left the deceased there with the appellant; that on the next day the stepfather of the deceased saw him at the hospital, and at that time the deceased told his stepfather that Curley Young shot him.
State's evidence further tended to prove that in the early morning hour on September 27, 1976, Mr. M.H. Muller, the owner and operator of Alabama Security Police Company which provides guard and patrol services for private concerns in the city of Mobile, together with Thomas R. Sandell, were in an automobile on their way to the Deishiki Club on Stone Street in the city of Mobile for the purpose of checking on a guard furnished by Alabama Security Police Company for the club when they saw the deceased lying in the street with his head lying in a pool of blood; that Mr. Muller saw blood which looked like it was coming from the head and shoulder of the deceased; that the deceased was screaming that his arm and his head hurt; mostly the deceased was screaming that, "I'm dying. He killed me. I'm dying. He killed me. He killed me;" that Mr. Muller told the deceased, "well, you're not dead yet, so don't get so excited. Calm down and you have a chance. Calm down. We're getting an ambulance for you;" that deceased kept saying, "Get me an ambulance. Get me an ambulance. I'm dying. I'm dying." Mr. Muller said to deceased, "Just calm down. Who shot you?" and the deceased said, "He shot me." Mr. Muller said, "Who shot *Page 1009 
you?" and the deceased said, "Curley — ." On September 27, 1976 deceased was admitted to a hospital with a gunshot wound to the back of the head and one in his shoulder, and died on the 2nd day of October, 1976. Death was due to a gunshot wound to the head, and an autopsy of deceased revealed two bullet injuries — one to the shoulder and one to the head; that one bullet struck the base of the brain fracturing the bone and damaging the brain producing hemorrhage and swelling with damage to the spinal cord as it emerged from the brain; that death was attributed to injury to the brain and the first portion of the spinal cord.
State further offered evidence of Sergeant Gavin Lamar Presnall of Mobile Police Department, Detective Division, and of Mr. Henry Nunn, Jr., a commercial artist and sign painter. All of these were present at the scene where Mr. Muller found the deceased lying in the street on September 27, 1976. All of the foregoing witnesses described the scene and statements of the deceased at the scene essentially the same as Mr. M.H. Muller.
State offered evidence that the appellant was known by the name of Lovett Young, Jr., and as Curley Young; that when the officers who arrested appellant in this case approached him, he ran about a block, and was caught by two officers. The State further offered the evidence of Shirley Sumpter, a sister of the deceased as to statements made to her by the deceased that he was dying and that the appellant shot the deceased. These statements will be more fully set out later in this opinion.
The appellant offered himself as a witness and testified that his name was Lovett Young, and he was also known as Curley Young; that he was 21 years of age, and had lived at 1905 Morton Street in Mobile with his mother and father all his life; that he knew the deceased; that the deceased visited with him on the day before he was shot; that he liked the deceased; that he knew nothing of the shooting of the deceased; that he did not see the deceased on the night he was shot; that the appellant was at the pool hall, or his house, all the night, and did not know of the shooting of the deceased until about noon the next day when he went to the pool hall; that he does not know anything about the shooting of deceased; that he had never been convicted of a crime of violence.
The sufficiency of State's evidence to sustain the jury verdict of murder in the first degree having been properly raised by the record has been carefully considered by the Court. The essential elements of murder in the first degree are that the taking of the life of a human being must have been willful, deliberate, malicious and premeditated. Code ofAlabama, 1975, Sec. 13-1-70; Coats v. State, 253 Ala. 290,45 So.2d 35; Cosby v. State, 269 Ala. 501, 114 So.2d 250. We hold that under the facts in this record the State's evidence fully supports the jury verdict, and that the trial court did not err in overruling appellant's motion to dismiss the indictment as to murder in the first degree. Coats v. State, supra; Cosby v.State, supra; Code of Alabama, 1975, Sec. 13-1-70, Sec. 13-1-74.
Appellant complains that the trial court erred to appellant's prejudice by denying his motion to suppress a portion of the testimony of State's witness, Shirley Sumpter, sister of the deceased, wherein she testified that when she asked her brother who shot him, he replied, "Curley Young was the one who shot me." The appellant contended in the trial court that the statement of the deceased to his sister was not a dying declaration and should be suppressed because: first, it was made in response to a question when she asked him "Who shot you;" second, that the deceased was not in extremis when he made the statement to her because he said to his sister on one occasion, "To tell the family not to do anything to Curley, because if he lived he was going to get him back, but if he died, for us to bring him to court."
First, with reference to appellant's contention that the statement of the deceased was not admissible in evidence as a dying declaration because it was in response to a question propounded to him by his sister, in *Page 1010 
the case of Anderson v. State, 79 Ala. 5, on page 8, Justice Sommerville, speaking of a dying declaration, said, "The declarations were, therefore, admissible, and it was immaterial that one of these statements was elicited by an inquiry propounded to the declarant." In the case of Ingram v. State ofAlabama, 67 Ala. 67, on page 71, Justice Stone, speaking of a dying declaration, said, "Part of the declaration of the deceased was in reply to a question asked him. This precise question has been several times before the English courts, and it was ruled that the fact that the declaration was made in reply to an inquiry did not render its admission illegal."
We hold that the fact that a declaration of the deceased is in answer to a question propounded to him does not render its admission illegal. Anderson v. State of Alabama, supra; Ingramv. State of Alabama, supra; Greer v. State, 156 Ala. 15,47 So. 300; Nolan v. State, 207 Ala. 663, 93 So. 529; Tyler v. State,207 Ala. 129, 92 So. 478.
We now consider the appellant's contention with reference to the trial court's finding that the deceased was in extremis when he told his sister who shot him. We find from the record before us that the sister of the deceased was called by the appellant as a witness and testified on direct examination before the trial judge on the hearing of the motion to suppress in substance the following: that she was the sister of deceased; that he was shot on September 27, 1976; that she visited him every day while he was in the hospital; that she had several conversations with him; that he died on October 2, 1976. When she first arrived at the Mobile Medical Center on September 27, 1976, she saw deceased in the emergency room, and he stated that he was in pain; that he had been shot in the head and shoulder; that she asked him who shot him. Later on in the day when she visited the deceased, he was crying and told her he was in pain. He asked the doctor for pain medicine, but the doctor would not give it to him. He said, "That Curley had shot him, and to tell the family not to do anything to Curley, because if he lived, he would get him back, but if he died, for us to bring him to court."
On cross-examination the witness testified that, when she visited her brother on the morning of September 27, 1976, at about 9:00 A.M., in the intensive care room at Mobile Medical Center, he said to her that he knew he was going to die; he said he believed he was going to die because he was in pain; that he said Curley was the one that "done it;" that she asked him what was Curley's full name, and he said that all he knew was the last name was Young; that was the Young man that my mother had carried him over to his house that morning. Her brother told her he believed he was going to die; that he knew he was shot in the head, because he complained of headache; that the doctor told him he would get well, but the bullet had cracked his skull, and the brain swelled; that deceased believed that he was going to die even though the doctor told him he was going to be fine, and he was going to live. He was shot in the head and left shoulder.
It is the duty of the trial court to determine if the declarant of a dying declaration was in extremis at the time the declaration was uttered, and if the declaration was made under a sense of impending death as a result of his wound, and if it is not otherwise objectionable, it should be admitted. In law the sanction of an oath is present. There is no set rule to determine a proper predicate for the admission of a dying declaration. Each case must be considered by the trial judge on its merits. In determining the predicate the trial court should consider statements of the deceased, the gravity and nature of his wounds, his physical condition, time between wounds and death, and all other facts tending to show the state of the mind of the deceased at the time the declarations were made. This Court should not disturb the finding of the trial court if there is sufficient evidence to sustain it. The appellant, in his argument, would confine the trial court, and this Court, to the consideration of one isolated statement of the witness brought out on skillful examination by appellant's counsel. The trial court did, and it was its duty to, *Page 1011 
consider all of the evidence brought out on the motion to suppress and determined from such evidence that the deceased was in extremis at the time he made the declaration before allowing it in evidence. We hold that there was sufficient evidence before the trial judge to sustain his action in overruling appellant's motion to suppress, and this Court should not interfere. Ragland v. State, 238 Ala. 587,192 So. 498; Kissic v. State, 266 Ala. 71, 94 So.2d 202; Riddle v.State, 41 Ala. App. 682, 149 So.2d 465; Sidney v. State,265 Ala. 136, 89 So.2d 745; Brooks v. State, 32 Ala. App. 389,27 So.2d 48; certiorari denied, 248 Ala. 239, 27 So.2d 55; Shiklesv. State, 31 Ala. App. 423, 18 So.2d 412; certiorari denied,245 Ala. 641, 18 So.2d 417.
Appellant insists that he was denied a fair trial due to the improper conduct of prosecuting counsel during appellant's trial in asking him questions about crimes that he had not been convicted of. On direct examination of the appellant, he testified that he had never been convicted of a crime of violence. During the cross-examination of appellant by the prosecuting counsel we find in the record the following:
(CROSS EXAMINATION BY MR. VALESKA)
 "Q As a matter of fact, they arrested you for having no pistol permit, didn't they?
"MR. PORTER: Judge, I object.
"MR. VALESKA: They went into it about his gun.
"MR. PORTER: We move for a mistrial.
"THE COURT: Denied.
"MR. VALESKA (RESUMED)
 "Q As a matter of fact, Curley, back on August the 7th, 1976 you were arrested and convicted of —
"MR. PORTER: Judge, we are going to object —
"MR. VALESKA: Let me finish my question.
"MR. PORTER: We move for a mistrial.
 "THE COURT: He has a right to object. I sustained the objection to the question that has already been objected to. Now, we don't want you to repeat the same verbage.
 "MR. VALESKA: I'm not, Judge. This is a completely different one.
"THE COURT: Well, you have already repeated it.
 "MR. PORTER: Judge, we object to any testimony about him being arrested. If he wants to ask him if he's been convicted of a crime, that's all right. He knows this is improper, and he's just trying to prejudice the jury.
 "THE COURT: All right. I don't want you to argue your case in front of the jury. Grant the motion that he not proceed further with it. I deny the motion for a mistrial.
"MR. VALESKA (Resumed):
 "Q As a matter of fact, you were convicted on August the 7th, 1976 for assault with a gun and leaving the scene of an accident, weren't you?
"A I was not convicted.
 "Q Oh, you were not convicted? "A I was not convicted.
"Q What happened?
 "MR. PORTER: Judge, we are going to object to this. He said that he wasn't convicted. We move for a mistrial.
 "THE COURT: Sustain the objection. I am going to deny the motion for a mistrial. I want you to cease going into the area.
"MR. VALESKA: Judge, they went in —
"THE COURT: It's not allowed by law, Mr. Valeska.
 "MR. VALESKA: Judge, they went into the fact about him having a gun, and they opened the door. I submit to the Court —
"THE COURT: I already made my ruling, Mr. Valeska.
"MR. VALESKA (Resumed):
 "Q He asked you if you had ever been convicted of a crime of violence. Remember that? Remember the gentleman right there asking you that?
"A I believe I said, `no'.
"Q Do you want to think about it?
 "A I was never convicted of a crime. I was never convicted of no crime period. *Page 1012 
"Q As a matter of fact, you were convicted of
 burglary in the Circuit Court of Mobile County August the 27th, 1974, weren't you?
"MR. PORTER: Judge —
"THE COURT: Is there an objection?
 "MR. PORTER: Yes, sir, Judge. We are going to object to this.
"THE COURT: Approach the bench.
"(Discussion held at bench.)
 "THE COURT: What was your answer to the last question? Do you want the reporter to repeat it?
"THE WITNESS: Yes, sir.
"THE COURT: Repeat the question.
"(Reporter read.)
"THE COURT: What's your answer to the question?
"THE WITNESS: I was not convicted.
"MR. VALESKA (Resumed):
"Q You were not convicted?
"A No.
 "MR. PORTER: Judge, I'm going to object to this and move for a mistrial.
 "THE COURT: Overrule your objection and deny your motion."
The Assistant District Attorney requested to go into some matters outside of the presence of the jury, which request was granted. Out of the presence and hearing of the jury, State's counsel stated to the trial judge that appellant had been charged with burglary in the first degree, and that the case was disposed of by a plea of not guilty by reason of insanity. The State contended that this was the same as a conviction for the purpose of moral turpitude. Appellant's counsel contended it was not the same as a conviction; that a certified copy of a judgment finding the appellant guilty of first degree burglary is the lawful way to prove a prior conviction when it is denied by the witness. The trial court ruled that a judgment finding a defendant not guilty by reason of insanity was not a conviction and not admissible in evidence. State's counsel at no time during the trial offered a certified copy of a conviction of the appellant for carrying a pistol without a permit, for an assault with a gun, for leaving the scene of an accident, or for burglary in the first degree. In the presence and hearing of the jury State's counsel, after being instructed by the trial court on several occasions to cease going into the area of prior convictions, proceeded to go into the matter of prior convictions when he had no legal evidence of such convictions and knew he could not support them by evidence. It appears to us from the record before us he made his point clear to the jury that the appellant had been charged with other crimes and had been confined to the hospital for the insane by a court on a charge of burglary in the first degree.
We hold that a judgment based on a jury verdict finding a defendant not guilty by reason of insanity of a charge of burglary in the first degree is not a conviction of the defendant and is not admissible in evidence to impeach him as a witness. Boswell v. State, 63 Ala. 307; Code of Alabama, 1975, Sec. 15-16-2; Weeks v. State, Ala.Cr.App., 342 So.2d 1335.
We now come to the most serious question presented by this record. Is it unprofessional conduct for a prosecuting attorney to ask questions on cross-examination of the defendant which imply the existence of a factual predicate which the examiner knows he cannot support by evidence? As said by Judge Harris, Presiding Judge of this Court, in the case of Bezotte v. State, Ala.Cr.App., 358 So.2d 521, at page 525:
 "We find in the American Bar Association Standards for Criminal Justice the following statement concerning the function of the prosecution. `It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by the evidence.' Similarly, Alabama law states that, while the prosecuting attorney is under a duty to prosecute the case with vigor and earnestness, he should not take unfair advantage of the defendant. Arant v. State, 232 Ala. 275, 167 So. 540.
 Even though a prior conviction involving moral turpitude may be shown upon the cross-examination of a witness, this *Page 1013 
examination should be subject to the limitation that it be conducted in good faith. See 3 A.L.R.3d 965, and the cases cited therein, concerning lack of documentary proof of a prior felony conviction."
In the case of McGovern v. State, 44 Ala. App. 197,205 So.2d 247, 250, Judge Johnson declared that:
 "The State owed appellant that diligence necessary to establish properly a predicate and to clarify whether or not his alleged conviction involved moral turpitude, outside of the hearing of the jury, so as to not prejudice appellant in the eyes of the jury."
We have reviewed the entire record in this case, including all of the oral charge to the jury and hold that, under the facts shown in the record in this case, the appellant was denied a fair trial due to the improper conduct of the prosecuting attorney in asking questions which implied the existence of factual predicates which the examiner knew he could not support by evidence, and that the court erred in overruling appellant's motion for a mistrial. Jones v. State,21 Ala. App. 505, 109 So. 564; Bezotte v. State, supra; McGovernv. State, supra; American Bar Association Standards ForCriminal Justice, Prosecution Function Examination OfWitnesses, Sec. 5.7 (d); Code of Alabama, 1975, Sec. 12-21-162;Birmingham Baptist Hospital, Inc. v. Blackwell, 221 Ala. 225,128 So. 389; Gregath v. Bates, Ala.Civ.App., 359 So.2d 404;Moore v. State, 30 Ala. App. 552, 9 So.2d 146; People v. Perez,58 Cal.2d 229, 23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946;Wolffe v. Minnis, 74 Ala. 386; Blue v. State, 246 Ala. 73,19 So.2d 11; Madison v. State, 55 Ala. App. 634, 318 So.2d 329; certiorari denied, 294 Ala. 764, 318 So.2d 337.
For the error pointed out, the judgment of the trial court should be reversed and the cause remanded for a new trial.
The foregoing opinion was prepared by the Honorable Joseph J. Mullins, a retired Circuit Judge, serving as a Judge of this Court under the provisions of Section 6.10 of the new Judicial Article (Constitutional Amendment No. 328, Act # 1051, 1973); his opinion is hereby adopted as that of the Court.
The judgment below is hereby reversed and remanded.
REVERSED AND REMANDED.
All the Judges concur.