THE STATE OF OHIO, APPELLANT, *v.* TUOMALA, APPELLEE.

[Cite as *State v. Tuomala,* 104 Ohio St.3d 93, 2004-Ohio-6239.]

(No. 2003–0174—Submitted December 3, 2003—Decided December 8, 2004.)

**O'Donnell, J.**

I

{¶ 1} The facts that give rise to our appeal are not disputed. On May 8, 2000, members of the Geneva Police Department arrested Jeffrey Tuomala, who was operating a stolen pickup truck, and charged him with one count of receiving stolen property, a fourth-degree felony. Both before and after his indictment on June 7, 2000, Tuomala failed to post bond and remained in the Ashtabula County Jail. At arraignment on June 12, he entered a plea of not guilty but later sought a court-ordered competency evaluation and subsequently changed his plea to not guilty by reason of insanity.

{¶ 2} On August 25, 2000, the trial court determined Tuomala to be incompetent to stand trial and ordered him committed to the Northcoast Behavioral Healthcare facility. Subsequent to his treatment there, the court determined him to be competent to stand trial and returned him to the Ashtabula County Jail.

{¶ 3} Pursuant to court order, the Forensic Psychiatric Center of Northeast Ohio, Inc. examined Tuomala and found him to have been insane at the time of the offense. On February 8, 2001, the trial court found him not guilty by reason of insanity and, after further evaluation by Forensic Psychiatric Center, committed him pursuant to R.C. 2945.40 to Heartland Behavioral Healthcare.

{¶ 4} The trial court determined that, pursuant to R.C. 2945.401(J)(1)(b), it had jurisdiction to continue Tuomala's commitment to the mental health facility for a length of time equivalent to the maximum sentence he could have received if he had been convicted of receiving stolen property—in this case, 18 months. Because the court had found Tuomala not guilty by reason of insanity on February 8, 2001, it ruled that its jurisdiction would terminate on August 8, 2002, the date

it identified as the expiration date of the maximum term of imprisonment that he could have served.

{¶ 5} On appeal, the Eleventh District Court of Appeals reversed the judgment of the trial court, holding that the court should have applied R.C. 2967.191 and credited Tuomala with time served prior to the court's finding him not guilty by reason of insanity. Under the appellate court's holding, Tuomala's commitment should have been calculated from the date of his arrest on May 8, 2000, and therefore the trial court's jurisdiction should have extended only until November 2001.

{¶ 6} This cause is now before us upon our acceptance of a discretionary appeal.

{¶ 7} The appellate court noted that the trial court's jurisdiction ended when Tuomala's confinement expired in August 2002; however, the appellate court reached the merits because the issue, though moot, was capable of repetition, yet evading review. We address the issue for the same reason. See *State ex rel. Plain Dealer Pub. Co. v. Barnes* (1988), 38 Ohio St.3d. 165, 527 N.E.2d 807, paragraph one of the syllabus.

## II

{¶ 8} The parties do not dispute that the trial court properly retained jurisdiction over Tuomala until final termination of his court-ordered commitment. Nor do the parties dispute that, pursuant to R.C. 2945.401(J)(1)(b), the length of his commitment is equal to the maximum time of imprisonment he could have received had he been convicted of the fourth-degree felony. The dispute arises over whether Tuomala is entitled to credit for preadjudication confinement pursuant to R.C. 2967.191.

{¶ 9} R.C. 2967.191 requires the Department of Rehabilitation and Correction to reduce a prisoner's stated prison term by the total number of days of presentence confinement "arising out of the offense for which the prisoner was *convicted and sentenced.*" (Emphasis added.)

{¶ 10} The state asserts that the provisions of R.C. 2967.191 do not apply to Tuomala because his confinement in a mental health facility did not arise from an offense *for which he was convicted and sentenced.* Tuomala claims entitlement to the credit for the time of his preadjudication confinement, arguing that the determination of his competency to stand trial was the "reason arising out of the offense" for his confinement.

### III

#### A. Plain Language

{¶ 11} No proposition is more fundamental to our accepted notions of statutory interpretation than that "the intent of the lawmakers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the lawmaking body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph two of the syllabus; see *Holiday Inns, Inc. v. Limbach* (1990), 48 Ohio St.3d 34, 36, 548 N.E.2d 929 (reaffirming the maxim that "[t]he question regarding what the General Assembly intended to enact will not be entertained when the meaning of what was enacted is clear and plainly expressed").

{¶ 12} Consistent with this long-standing principle, "it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used." *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. Given that R.C. 2967.191 requires a "conviction" as a condition precedent to the reduction of a prisoner's sentence, the threshold issue is whether a person who is found not guilty by reason of insanity is "convicted" by virtue of that finding.

{¶ 13} In determining the meaning that we should attribute to the word "conviction," we are mindful that "all of the terms used should be given their usual and ordinary meaning and signification except where the lawmaking body has indicated that the language is not so used." *Carter v. Youngstown Div. of Water* (1946), 146 Ohio St. 203, 32 O.O. 184, 65 N.E.2d 63, paragraph one of the syllabus. We therefore turn to the ordinary meaning of the word "conviction."

{¶ 14} A "conviction" is an "act or process of judicially finding someone guilty of a crime; the state of having been proved guilty." Black's Law Dictionary (7th Ed.1999) 335. Thus, the ordinary meaning of "conviction," which refers exclusively to a finding of "guilt," is not only inconsistent with the notion that a defendant is not guilty (by reason of insanity or otherwise), it is antithetical to that notion. Indeed, the notion that a person is *convicted* by virtue of being found *not guilty* is an oxymoron (a "not guilty conviction"). This interpretation is further supported by the fact that the trial court did not enter a judgment entry of conviction pursuant to Crim.R. 32(C).

{¶ 15} The language surrounding the word "conviction" in R.C. 2967.191 confirms this reading. Specifically, R.C. 2967.191 provides, "The department of rehabilitation and correction shall reduce the stated *prison term* of a *prisoner* * * * by the total number of days that the prisoner was confined for any reason

arising out of the offense for which the prisoner was convicted and *sentenced* * * *." (Emphasis added.) When a judge or jury determines that a defendant is not guilty by reason of insanity, however, it does not "sentence" the defendant to a "prison term." To the contrary, R.C. 2945.40(F) authorizes the trial court to "*commit* the person to a *hospital* operated by the department of mental health." (Emphasis added.) Rather than being "sentenced," therefore, a defendant who is found not guilty by reason of insanity is *committed*; and rather than being a "prisoner" who receives a "prison term," such a defendant is a *patient* who is committed to a *hospital*. Thus, the language that surrounds the word "conviction" in R.C. 2967.191 removes any doubt that the statute does not apply to a defendant who is found not guilty by reason of insanity.

## B. Other Jurisdictions

{¶ 16} Our research reveals that every jurisdiction that has addressed whether a verdict of not guilty by reason of insanity is a "conviction" has answered that question in the negative. The United States Court of Appeals for the District of Columbia Circuit has held, for example, that an "acquittal by reason of insanity was not a 'conviction'" within the meaning of the Federal Escape Act. *United States v. Powell* (C.A.D.C.1974), 503 F.2d 195, 195–196, 164 U.S.App.D.C. 104. Similarly, the United States District Court for the Western District of Oklahoma has concluded that a "[j]ury determination that the defendant was insane at the time of the acts charged must result in a verdict of *acquittal*, not a conviction of a criminal offense." *Silk–Nauni v. Fields* (W.D.Okla.1987), 676 F.Supp. 1076, 1081. The United States District Court, District of Columbia, has likewise held that a verdict of not guilty by reason of insanity is not a conviction. *Graves v. Heckler* (D.C.D.C.1985), 607 F.Supp. 1186, 1190.

{¶ 17} Perhaps most telling of the manner in which other jurisdictions have addressed this issue is the force with which the federal court in *Graves* rejected the argument adopted by the appellate court in this case. After surveying other jurisdictions that have addressed the issue, the federal court noted that "[n]o tribunal has ever held, insofar as this Court is aware, that an acquittal by reason of insanity is a conviction for any purpose." Id. Indeed, the court even cautioned that "there might well be substantial constitutional problems if the government were correct that [the legislature] meant to treat this type of an acquittal as a conviction." Id., fn. 17. The court concluded, "In short, the * * * reliance on the [statutory word conviction as synonymous with acquittal by reason of insanity] is totally devoid of substance." Id.

{¶ 18} Virtually every state court that has addressed the issue has similarly rejected the rationale of the court of appeals. The Supreme Judicial Court of Massachusetts has recently held that "[a] verdict of not guilty by reason of insanity is not a 'conviction * * *,'" *Commonwealth v. McLaughlin* (2000), 431

Mass. 506, 507, 729 N.E.2d 252, and courts of appeals in Alabama, Arizona, California, New York, and Oregon have agreed. See *Young v. State* (Ala.Crim. App.1978), 363 So.2d 1007, 1012 (declaring that "a judgment based on a jury verdict finding a defendant not guilty by reason of insanity of a charge of burglary in the first degree is not a conviction of the defendant"); *State v. Heartfield* (2000), 196 Ariz. 407, 409, 998 P.2d 1080 (observing that "a judgment of guilt except for insanity is not a judgment of criminal responsibility and, therefore, is not a conviction in the sense of a criminal judgment pronouncing sentence"); *Newman v. Newman* (1987), 196 Cal.App.3d 255, 259, 241 Cal.Rptr. 712 (noting that a person found not guilty by reason of insanity "was not 'convicted' * * * and no judgment of conviction was entered against her"); *People v. Morrison* (1984), 162 Cal.App.3d 995, 998, 208 Cal.Rptr. 800 (concluding that certain statutory provisions "do[ ] not apply to [the defendant] because she was found not guilty by reason of insanity and such a finding is not a conviction"); *People v. Ortega* (N.Y.Sup.1985), 127 Misc.2d 717, 722, 487 N.Y.S.2d 939 (accepting the proposition that "a defendant's acquittal by reason of insanity was not a conviction"); *State v. Gile* (1999), 161 Ore.App. 146, 155, 985 P.2d 199 (holding that "a judgment of guilt except for insanity is not a conviction in the sense of a judgment imposing a sentence").

{¶ 19} Similar to the reaction of the federal court in *Graves* to the issue presented before us today, a California court of appeals has criticized reasoning adopted by the appellate court. The California court asserted over 70 years ago, "It would require a peculiar process of reasoning to reach the conclusion that a defendant who was finally found not guilty by reason of insanity of a kind which rendered him incapable of committing the crime with which he was charged was nevertheless convicted of that crime." *In re Merwin* (1930), 108 Cal.App. 31, 32, 290 P. 1076. In rejecting such reasoning, the court concluded that "[t]he finding of the jury that the defendant was not guilty by reason of insanity * * * made it impossible for the court to render a judgment of conviction." Id. at 33, 290 P. 1076.

{¶ 20} Although the General Assembly has set forth a mechanism whereby defendants who are convicted and sentenced may receive credit for time served, it simply has not provided the same mechanism for defendants who are found not guilty by reason of insanity and are committed to a treatment facility. Absent such a legislative enactment, the General Assembly has not conferred to any entity the authority to reduce the commitment period of these individuals for time served. To judicially confer that authority would invade the province of the General Assembly.

### C. Legislative Intent

{¶ 21} Our prior cases have consistently held that courts should not look beyond the statutory language when the words of the statute are clear and

unambiguous. Indeed, the words here *are* clear and unambiguous. The words unequivocally state that a prisoner's sentence may be reduced by the number of days that the prisoner was confined only if that confinement arises from the offense "for which the prisoner was convicted and sentenced." R.C. 2967.191. These clear and unambiguous words are the law.

{¶ 22} Assuming that legislative intent should be considered, there is reason to believe that the General Assembly *did* intend to exclude individuals who are found not guilty by reason of insanity from the operation of R.C. 2967.191. Perhaps the most compelling reason—other than the unambiguous *words* that the General Assembly used—is that the justification for finding an individual not guilty by reason of insanity stems from the defendant's lack of mental culpability. As a result, the court may place the defendant in a treatment facility for rehabilitation. Precisely because the purpose of such treatment is rehabilitation, the duration of the defendant's time in the treatment facility does not depend on whether the defendant has been previously confined; to conclude otherwise would only cut short the rehabilitation process and adversely affect acquitted persons who are in need of treatment. See *Jones v. United States* (1982), 463 U.S. 354, 368–370, 103 S.Ct. 3043, 77 L.Ed.2d 694. As the United States District Court for the District of Columbia has observed, "the government has produced no evidence that [the legislature] intended to equate a mental hospital with a jail, prison, or other penal or correctional institution." *Graves,* 607 F.Supp. at 1190.

{¶ 23} When a court attempts to discern legislative intent from extratextual indications, it opens the door to different views about what the law *ought* to be (or, when the text conflicts with that conclusion, what it *should* have said). If the legislature had intended the word "conviction" in R.C. 2967.191 to encompass certain persons who are not "convicted" as the word is typically understood, then the General Assembly could have easily written, and in the future may amend, the statute to reflect that intent.

### D. Future Implications

{¶ 24} To adopt a contrary view would set a precedent of application for the word "conviction"—and for other words, such as "prison," "prisoner," and "sentence"—that will have unintended and undesirable consequences in other contexts. Indeed, the cases cited above from other jurisdictions bespeak the wide range of legal disputes that turn on the distinction between a conviction and a verdict of not guilty by reason of insanity. Future litigants could no doubt rely on a contrary opinion to support a mistaken contention that a verdict of not guilty by reason of insanity is commensurate with a conviction—and, by extension, with a finding of guilt.

{¶ 25} The foregoing point is perhaps best illustrated by observing that future litigants could rely on the proposition that individuals found not guilty by reason

of insanity should be divested of the civil rights, such as the right to vote, that are divested from individuals who have been convicted of a felony. See, e.g., R.C. 2961.01 ("A person *convicted of a felony* under the laws of this or any other state or the United States, unless the conviction is reversed or annulled, is *incompetent to be an elector or juror or to hold an office of honor, trust or profit*" [emphasis added] ). Such an interpretation—that the state can divest certain rights of an individual by virtue of that individual's being found not guilty of the crime— would give rise to serious constitutional concerns. See *Graves,* 607 F.Supp. at 1190, fn. 17. Thus, adoption of a contrary view would have application in other contexts and unforeseen effects on the criminal justice system in Ohio.

## IV

{¶ 26} Applying the foregoing to the case before us, we recognize that Tuomala correctly asserts that the court confined him for a "reason" arising out the offense. However, the court never convicted him of that offense, and he was never confined as a prisoner by the Department of Rehabilitation and Correction. His adjudicatory status of not guilty by reason of insanity neither classifies him as a prisoner nor subjects him to the control of prison authorities, and hence the specific terms of the statute prevent it from having any application to him or to those similarly situated.

{¶ 27} R.C. 2967.191 specifically directs only the Department of Rehabilitation and Correction to reduce the stated prison term of a prisoner. As set forth above, Tuomala never became subject to the control of that department, never received or served any prison term, and could never properly be classified as a prisoner.

{¶ 28} By its express terms, the mandate of R.C. 2967.191, that the Department of Rehabilitation and Correction reduce the stated prison term of a prisoner by the total number of days of presentence confinement "arising out of the offense for which the prisoner was convicted and sentenced," is expressly limited to those who have been convicted of an offense and sentenced therefor; the provisions of this statute do not apply to those persons found not guilty by reason of insanity because those individuals have neither been convicted of any offense nor sentenced therefor.

{¶ 29} Accordingly, because R.C. 2967.191 applies only to those who have been "convicted and sentenced," it does not entitle mentally ill persons subject to court-ordered hospitalization or those adjudicated not guilty by reason of insanity to any reduction in the term of their court-ordered commitment at a behavioral health facility.

{¶ 30} Tuomala, citing the appellate court opinion, further argues that R.C. 2967.191 applies to him because the Revised Code lacks a separate or parallel structure for those found not guilty by reason of insanity.

{¶ 31} Tuomala's argument is not persuasive. The lack of a parallel statute that would apply to those found not guilty by reason of insanity does not permit a court to construe the express language of a statute and apply it to situations not intended by the legislation.

{¶ 32} Accordingly, because R.C. 2967.191 applies only to those who have been "convicted and sentenced," it does not apply to individuals who have been found not guilty by reason of insanity and who are committed to a mental health facility because those persons have not been convicted of a crime nor sentenced therefor.

{¶ 33} Accordingly, the judgment of the court of appeals is reversed.

Judgment reversed.

MOYER, C.J., F.E. SWEENEY and O'CONNOR, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

LUNDBERG STRATTON, J., dissents.

---

**PFEIFER, J., dissenting.**

{¶ 34} This case is achingly simple. Nevertheless, the majority opinion, even as it pays glowing tribute to the glories of plain-language interpretation, completely ignores the most relevant statutory section.

{¶ 35} If Tuomala had been convicted of receiving stolen property, a felony of the fourth degree, the maximum sentence he would have received was 18 months. Subsequent to his arrest and prior to his commitment, Tuomala was held for approximately nine and one-half months. Therefore, pursuant to R.C. 2967.191, had Tuomala been convicted, his sentence would have been eight and one-half months, computed by subtracting the time served from the maximum possible sentence.

{¶ 36} But Tuomala was not convicted; he was found not guilty by reason of insanity. Therefore, R.C. 2967.191 does not apply. Instead, we should look to R.C. 2945.401(J)(1)(b), which provides that a person committed after being found not guilty by reason of insanity shall not be held in confinement beyond "[t]he expiration of the maximum prison term or term of imprisonment that the defendant or person could have received if the defendant or person had been convicted of the most serious offense with which the defendant or person is charged or in relation to which the defendant or person was found not guilty by reason of insanity." According to the plain language of R.C. 2945.401(J)(1)(b),

the period of Tuomala's confinement is based on the term of imprisonment that Tuomala would have served if he had been convicted.

{¶ 37} In theory, if convicted, Tuomala could have been sentenced to a prison term of 18 months. This theoretical sentence is apparently the justification for the majority's conclusion. But, on the facts before us, if convicted, Tuomala could not have been sentenced to 18 months of imprisonment because he had already been confined for nine and one-half months. According to the plain language of R.C. 2967.191, his term of imprisonment could not have exceeded eight and one-half months. Therefore, according to the plain language of R.C. 2945.401(J)(1)(b), his period of confinement cannot be longer than eight and one-half months, the maximum term of imprisonment for a fourth-degree felony conviction.

{¶ 38} The majority opinion does not dispute this conclusion because it does not even bother to address it. This blatant disregard for R.C. 2945.401(J)(1)(b) is especially troubling because R.C. 2901.04 states that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." The majority decision stands this imperative on its head, apparently concluding that it does not apply when a defendant is insane. Perhaps it should not, but that conclusion is not apparent from the statutory scheme.

{¶ 39} No matter how sound a judge's interpretation of a statute's plain language, that judge can defeat the intent of the General Assembly by ignoring relevant statutes. I am baffled by the majority's ability to reach its conclusion without discussing R.C. 2945.401(J)(1)(b); in doing so, it has disregarded the intent of the General Assembly. I dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

---

LUNDBERG STRATTON, J., dissenting.

{¶ 40} I respectfully dissent from the majority's holding that R.C. 2967.191 does not apply to those held in confinement after being found not guilty by reason of insanity.

{¶ 41} The parties do not dispute that the trial court properly retained jurisdiction over Tuomala until final termination of his court-ordered commitment. Nor do the parties dispute that, pursuant to R.C. 2945.401(J)(1)(b), the length of his commitment is equal to the maximum time of imprisonment he could have received had he been convicted of a fourth-degree felony. The dispute arises over whether Tuomala was entitled to credit for time served prior to the court's finding him not guilty by reason of insanity pursuant to R.C. 2967.191.

{¶ 42} Prior to July 1, 1997, a person found not guilty by reason of insanity could be committed until restored to sanity. See *State v. Hawkins* (1999), 87 Ohio St.3d 311, 720 N.E.2d 521. Since that date, R.C. 2945.401(J)(1), enacted as a reform measure, has provided that "[a] defendant * * * who has been committed pursuant to section * * * 2945.40 of the Revised Code continues to be under the jurisdiction of the trial court until the final termination of the commitment." The final termination occurs when either "[t]he * * * person no longer is a mentally ill person subject to hospitalization by court order" or "the maximum prison term or term of imprisonment that the * * * person could have received if the * * * person had been convicted of the most serious offense * * * in relation to which the * * * person was found not guilty by reason of insanity" expires. R.C. 2945.401(J)(1)(a) and (b). In this case, the maximum time Tuomala could have been held was 18 months because the crime of which he was accused was a fourth-degree felony. R.C. 2929.14(A)(4).

{¶ 43} R.C. 2967.191 provides for a reduction in the length of imprisonment "by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, *confinement for examination to determine the prisoner's competence to stand trial or sanity*." (Emphasis added.)

{¶ 44} The state argues that R.C. 2967.191 does not apply to Tuomala because Tuomala's confinement in a mental health facility did not arise from an offense for which he was "convicted and sentenced." Tuomala counters that R.C. 2967.191 applies because his confinement arose "out of the offense" at issue.

{¶ 45} In my view, an individual found not guilty by reason of insanity and committed to a treatment facility pursuant to R.C. 2945.40 should be entitled to credit for time served pursuant to R.C. 2967.191.

{¶ 46} As noted by the appellate court, there is no separate statutory structure parallel to R.C. 2967.191 for those found not guilty by reason of insanity. But absent the context of the sentencing laws drafted for application to convicted felons, R.C. 2945.401(J)(1) would be meaningless. The appellate court notes:

{¶ 47} "R.C. 2945.401(J)(1) requires the trial court to reference R.C. 2929.14 to determine the maximum sentence a person found not guilty by reason of insanity could have served if he had been convicted of the charged offense. Although R.C. 2929.14 is explicitly applicable only to convicted felons who must serve a definite prison term, it would be impossible for a trial court seeking to determine the length of its jurisdiction over a person found not guilty by reason of insanity to do so without consulting R.C. 2929.14.

{¶ 48} "If the trial court must reference the felony sentencing laws in order to determine the term of its jurisdiction over a defendant found not guilty by reason

of insanity, it must attempt to apply all of the applicable laws consistently, and cannot arbitrarily pick and choose among the various code sections that govern sentencing decisions."

{¶ 49} I agree. Individuals ultimately found not guilty by reason of insanity have often been held for great periods of time prior to disposition of their cases while their competency to stand trial is examined. By this court's decision not to apply R.C. 2967.191 to individuals found not guilty by reason of insanity, those individuals may still be confined for periods of time greatly exceeding those of their guilty counterparts. If it was the intent of the General Assembly in enacting R.C. 2945.401 to introduce some equity into a system that permitted an individual found not guilty by reason of insanity to be confined far longer than he or she would have been otherwise confined had he or she been found guilty, failure to apply R.C. 2967.191 upon a finding of not guilty by reason of insanity will defeat that purpose, and the inequity will still exist.

{¶ 50} Rather, I agree with the appellate court's assessment that "R.C. 2945.401(J)(1)(b) is highly indicative of a desire to treat convicted felons and those found not guilty by reason of insanity in a comparable manner in terms of length of incarceration and psychiatric commitment regardless of the implications for treatment." In fact, R.C. 2967.191 permits credit for "confinement for examination to determine the prisoner's competence to stand trial or sanity." Thus, a person found *competent* to stand trial and ultimately found *guilty* of the charged crimes would be credited with time spent awaiting that determination of competency. But a person found *competent* to stand trial and ultimately found *not guilt by reason of insanity* would not be credited with time spent awaiting that determination of competency.

{¶ 51} For example, Defendant A and Defendant B are both found incompetent to stand trial and are remanded to a state hospital to be restored to competency. Their charged offenses are lesser felonies, so pursuant to R.C. 2945.38(C)(2), they may be held for up to six months to be so restored. Both are held for the full six months for restoration to competency.

{¶ 52} Defendant A is subsequently convicted and sentenced to the maximum term of imprisonment (in this case, 18 months). Pursuant to R.C. 2967.191, Defendant A is given six months' credit for time spent while being restored to competency. Thus, Defendant A is released after completing 12 months of imprisonment for a total term of confinement of 18 months.

{¶ 53} Defendant B is held before trial while being restored to competency for the same six months, is found competent to stand trial, but is ultimately found not guilty by reason of insanity. Under my reading of R.C. 2967.191, Defendant B is entitled to the same credit as Defendant A. Thus, Defendant B would be required

to spend only 12 months in a mental hospital. Both Defendants A and B would serve the same total time of confinement.

{¶ 54} Under the majority's scenarios, Defendant B could be held during his restoration to competency for six months and then confined for another 18 months. If Defendant B still needs care or treatment, he should be remanded to the civil system. The criminal justice system is not, and should not be, a mental hospital.

{¶ 55} When an individual is found not guilty by reason of insanity, there is *never* a conviction and sentence. Therefore, we should look to the legislature's intent in R.C. 2945.401, which was, in my view, to equalize the treatment of those in the system who were convicted and those in the system who were not convicted, yet are being held longer than those who were. Credit for time served can be an important factor in the length of time an individual is held, and denial of such credit defeats the purpose of R.C. 2945.401.

{¶ 56} The state argues that application of R.C. 2967.191 would reduce the time an individual found not guilty by reason of insanity could be "treated," but if the criminal commitment ends and the offender is not ready for society, a process exists to transfer the case to the probate system for possible civil commitment proceedings. In particular, R.C. 5122.01(B) provides the definition of a " '[m]entally ill person subject to hospitalization by court order' " as a person who, because of his or her illness:

{¶ 57} "(1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;

{¶ 58} "(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;

{¶ 59} "(3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or

{¶ 60} "(4) Would benefit from treatment in a hospital for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person."

{¶ 61} Thus, a mechanism exists in our legal system to assist persons whose criminal commitments have terminated but who are not yet ready to reenter

society. We should not use the criminal justice system as a substitute for appropriate treatment in the civil system. I do not believe that the disparity countenanced by the majority today was the result intended by the General Assembly. If I am correct, I would urge the General Assembly to take up this issue and make the appropriate statutory modifications to reflect its original intent. Offenders found competent and guilty are entitled to credit upon conviction under R.C. 2967.191; therefore, those found not guilty by reason of insanity should be entitled to the same credit when found competent to stand trial.

{¶ 62} Accordingly, I would hold that an individual found not guilty by reason of insanity and committed to treatment pursuant to R.C. 2945.40 should be granted credit for time served pursuant to R.C. 2967.191. Therefore, I would affirm the judgment of the court of appeals. I respectfully dissent.

--------

Thomas L. Sartini, Ashtabula County Prosecuting Attorney, and Angela M. Scott, Assistant Prosecuting Attorney, for appellant.

Marie Lane, Ashtabula County Public Defender, for appellee.

Eric Allen, urging affirmance for amicus curiae, Ohio Association of Criminal Defense Lawyers.